769 P.2d 1017

**STATE of Arizona, Appellee,**

v.

**Jeffrey Alan WALTON, Appellant.**

**No. CR–87–0022–AP.**

Supreme Court of Arizona,
En Banc.

Feb. 2, 1989.

**576**

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Paul J. McMurdie, Asst. Attys. Gen., Phoenix, for appellee.

Harold L. Higgins, Jr., Pima County Public Defender, Tucson, for appellant.

HOLOHAN, Justice (Retired).

The defendant, Jeffrey Walton, was convicted of first degree murder, armed robbery, kidnapping, and theft by control for abducting, robbing and killing Thomas Powell. He was sentenced to death on the murder conviction and to prison terms on the noncapital felony convictions, to be served consecutively to the death sentence.

The facts developed at trial are that the defendant and his two codefendants, Robert Hoover and Sharold Ramsey, had planned to rob at gunpoint some "old man that was drunk," take his car, tie him up, and leave him in the desert area outside of Tucson while they fled from the state in his vehicle. Instead, they encountered a young marine, Thomas Powell, in a bar parking lot. They took his wallet and keys and forced him into his car with them. They then proceeded out of the city on Speedway Boulevard to Gates Pass where they pulled off the road in a secluded spot. Having no materials suitable for tying up Powell, they forced him to lie face down on the ground while they debated his fate. Ultimately, the defendant took the gun and marched Powell into the darkness, leaving the other two in the car. The defendant instructed the codefendants to "turn up the radio." After a short walk, the defendant again forced Powell to lie prone on the ground; he shot the victim once in the head and hurried back to the vehicle.

The victim had been rendered unconscious and blind by the shot, but he eventually regained consciousness. Weakened and hampered by his blindness, he floundered in the desert. Approximately a week after the shooting, the victim died from exposure and pneumonia.

Soon after the killing, the defendant asked David Bilodeau for dynamite to destroy the victim's car, explaining that he had killed someone and needed to dispose of evidence. Mr. Bilodeau promptly related this information to police who eventually arrested the trio. The defendant gave the police a statement and led them to the murder area where they found Powell's body less than a day after he had succumbed.

We have jurisdiction pursuant to art. 6, § 5(3) of the Arizona Constitution and A.R.S. § 12–102 and § 13–4031. We affirm the conviction of guilt and sentences on all counts.

The defendant presents twenty-seven issues for our review. For the sake of brevity, we consolidate those into the following issues:

I. Rule 11: Whether the defendant should have had greater opportunity to develop evidence of incompetence despite a pre-Rule 11 screening indicating no incompetence.

II. Election of Murder Theories: Whether the state should have elected between premeditated and felony murder theories.

III. Voluntariness of Statement: Whether the defendant had voluntarily rendered his statement to the police.

IV. Voir Dire: Whether the jury had been impermissibly tainted by pretrial publicity and the judge's comment at voir dire.

V. Evidence: Whether the judge erred in evidence admissibility rulings.

VI. Jury Instructions: Whether the judge erred in instructing the jury.

VII. Death Sentence: Whether the Arizona death penalty is unconstitutional, and it was properly applied by the trial court when sentencing the defendant to death.

VIII. Prison Term Sentences: Whether the trial court erred in imposing prison terms on the noncapital offenses consecutive to the death sentence, and whether the trial court erred in considering the impact of those offenses on the victim's family to aggravate the prison sentences.

IX. Ineffective Assistance of Counsel: Whether the defendant's attorney provided ineffective assistance.

## I. RULE 11

Defendant first contends that the trial court erred when it denied his request for a Rule 11 competency evaluation and continuances to develop evidence of incompetency and insanity.

### A. *Rule 11 Evaluation*

Rule 11.1, Arizona Rules of Criminal Procedure, provides that the state shall not try anyone who is "unable to understand the proceedings against him or to assist in his own defense." If a defendant appears incompetent, any party may request a competency examination. 17 A.R.S., Rules of Crim.Proc., Rule 11.2. Pursuant to Rule 11.3, if the trial court determines that reasonable grounds exist for an examination, mental health experts are appointed to examine the defendant. Prior to making the determination whether reasonable grounds

exist, the trial judge may order a preliminary evaluation of the defendant. *State v. Johnson,* 147 Ariz. 395, 398–99, 710 P.2d 1050, 1053 (1985).

In the present case, the court ordered a preliminary evaluation of the defendant by Dr. Hinton, a psychologist with the Pima County Court Clinic. Dr. Hinton reported that the defendant displayed no signs of incompetence nor insanity. The trial court therefore concluded that there was no reasonable grounds for a Rule 11 examination. Under similar circumstances, we have held that the report of the psychologist was "more than sufficient ... to base a conclusion that defendant could assist in the preparation of his defense," hence the trial court did not abuse its discretion when it denied the motion for a Rule 11 examination. *State v. Borbon,* 146 Ariz. 392, 395, 706 P.2d 718, 721 (1985).

After the denial of the motion for mental examination, the defendant made several additional requests for a Rule 11 examination. However, the only showing made by the defense was the existence of a childhood history of psychiatric referrals and some blackouts caused by substance abuse. The trial court ruled, and we agree, that these matters were not relevant to show present incompetence to stand trial. Nonetheless, the defendant persistently argued that the trial court should treat amnesia and a history of substance abuse as evidence of incompetence. The trial court declined to accept the defense's theory. We find no abuse of discretion in the trial court's rulings.

In addition, the defendant also wanted a Rule 11 evaluation to provide him with evidence bearing on his insanity at the time of the offense. However, he never gave notice, as required by Rule 15.2(b), Ariz.R.Crim.P., that he would allege an insanity defense, nor did a subsequent mental examination conducted prior to sentencing disclose any basis for an insanity defense. The defense was not entitled to expert assistance on a defense he had no intention or basis to use. Therefore, we hold that the trial judge did not err by refusing to grant a Rule 11 examination.

### B. *Continuances*

■ On several occasions, the defendant sought continuances to develop evidence of incompetence or insanity related to his history of substance abuse and speculated mental illness. The court granted the defense counsel's first motion for continuance to allow him additional time for trial preparation. The trial court also ordered a preliminary mental evaluation of the defendant. After the examination and report by Dr. Hinton, subsequent motions for continuances to develop evidence of insanity were denied.

As noted above, the defendant is not entitled to continuances to gather evidence of insanity when he has not sought an insanity defense. Moreover, because the evidence he hoped to develop during continuances (memory impairment) is immaterial to his present competency and guilt, *People v. Amador*, 200 Cal.App.3d 1449, 246 Cal. Rptr. 605 (1988), the trial judge did not abuse his discretion in denying the second and subsequent requests for continuances.

### II. ELECTION OF MURDER THEORIES

■ Defendant next contends that the trial court erred when it refused to force the state to elect between premeditated and felony murder in trying him for first degree murder. The defense contends that the jury might have been confused by two theories, and defense counsel states that he encountered difficulty in preparing cross-examination strategy.

Initially we note that in *State v. Encinas*, 132 Ariz. 493, 647 P.2d 624 (1982), we held that first degree murder is a single crime whether it is tried on the ground of felony murder, premeditation, or both. *Id.*, 132 Ariz. at 496, 647 P.2d at 627. Therefore, the state was not required to elect between the two methods of committing first degree murder.

We turn to the defendant's specific complaints. First, speculation about *"potential* confusion among jurors" is insufficient to establish actual jury confusion. Second, the defense counsel has not provided us with any legal authority that supports his

proposition that due process should relieve him of the burden of complex trial strategies. Counsel cannot complain that preparing for felony murder as well as premeditated murder placed an undue burden on him when he had to prepare a defense against the felony charges alleged in the indictment, two of which were underlying felonies for the murder charge. He was not forced to choose between theories either, rather than simply prepare to defend against several theories. We therefore hold that the trial court did not err when it refused to order the state to elect to try the case on only one theory for first degree murder.

### III. VOLUNTARINESS OF STATEMENTS

The defendant next contends that the trial court erred when it denied his motion to suppress statements he made during police interrogation. In support of his fifth amendment claim, defendant refers the court to three statements made by the detective:

1) "It's nothing that can't be worked out,"

2) "to lie isn't going to help," and

3) "Give yourself a chance."

He asserts that those statements constituted promises which overbore his will, rendering his subsequent confession involuntary.

To determine the voluntariness of a confession, the court must evaluate the "totality of the circumstances" surrounding the confession. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226–27, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *Fikes v. Alabama*, 352 U.S. 191, 197, 77 S.Ct. 281, 284, 1 L.Ed.2d 246 (1957). The "totality of the circumstances" test is a highly fact-intensive test. Courts applying that test must consider details of interrogation, the specific police tactics, and the suspect's personal characteristics. *Rachlin v. United States*, 723 F.2d 1373, 1377 (8th Cir.1983). The crucial issue is whether police conduct overbore a suspect's will. *Leyra v. Denno*,

347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954).

■ The Supreme Court has held that confessions extracted by threats or violence, or direct or implied promises, are involuntary. *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed. 2d 747 (1970); *Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964); *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897). Thus, even without making an express promise, police who imply a benefit to the suspect in exchange for his information will not be permitted to introduce the resulting confession at trial. *State v. Burr*, 126 Ariz. 338, 340, 615 P.2d 635, 637 (1980); *State v. McFall*, 103 Ariz. 234, 236, 439 P.2d 805, 807 (1968). Nonetheless, police may use less egregious psychological tactics to obtain confessions. *See Haynes v. Washington*, 373 U.S. 503, 514–15, 83 S.Ct. 1336, 1343–44, 10 L.Ed.2d 513 (1963).

■ Preliminarily, we turn to the latter two challenged statements: "Give yourself a chance," and "to lie isn't going to help." Because they are no more than the detective's opinion and advice, those statements do not evoke fifth amendment protections. *See State v. McVay*, 127 Ariz. 18, 20, 617 P.2d 1134, 1136 (1980) (a statement couched in terms of an opinion is insufficient to render a confession involuntary); *Laub v. State*, 24 Ariz. 175, 177, 207 P. 465, 466 (1922) (the mere statement that it would be better to tell the truth does not render the confession involuntary); *State v. Hall*, 120 Ariz. 476, 479, 586 P.2d 1288, 1291 (App. 1978) (an officer's advice that telling the truth would have favorable impact on the suspect's sentence did not render the ensuing confession involuntary). Therefore, the latter two statements do not constitute impermissible promises or threats that implicate fifth amendment rights.

■ Next we note that "it's nothing that can't be worked out" clearly is not an express promise because it did not offer a benefit in exchange for information. *Accord Burr*, 126 Ariz. at 340, 615 P.2d at 637. Nonetheless, the defendant asserts that phrase constitutes an impermissible

implied promise. *See id.*, 126 Ariz. at 340, 615 P.2d at 637. We examine the context in which the police made that statement, the "totality of the circumstances," *Schneckloth*, 412 U.S. at 226–27, 93 S.Ct. at 2047–48, for guidance.

The detective had interrogated the defendant for approximately 45 minutes before he began to confront him with information about the murder. After less than a minute of detailing facts of the incident, the detective stated:

> "It's like I told you, you know, it's heavy and it's nothing that can't be worked out. You don't seem like the type of man who is going to try to run from a misstake [sic]. I want you to tell us the truth and to get it off your chest."

As the detective pressed him with more specific questions, the defendant persistently denied any participation in and knowledge of the crime, and offered an alibi. With continued probing, however, the defendant gradually changed his claim from noninvolvement to not remembering the incident. That, too, slowly gave way as the defendant began to "remember" some collateral information. Then he broke into tears and took a break.

The detective resumed confronting him with details of the crime until the defendant, again reduced to tears, began to remember minor details directly related to the incident. Approximately forty minutes lapsed between when the detective said that it can be worked out and when the defendant began to admit incriminating details; over the next two-hour period, the defendant gradually revealed more.

It is clear from the context of the whole interrogation that the defendant did not respond to the statement as if he understood it to be a promise. Instead, for approximately 45 minutes afterward, he continued to deny any involvement in the incident. When he at length offered some information, he did so not in response to a promise, but due to the continued confrontation with known details and the effect that had on his guilt or fear of retribution, compounded by the need to provide more

facts to extricate himself after he had implicated himself. In *Hall*, we held that the defendant must have relied on the promise before we will find his statement involuntary. 120 Ariz. at 457, 586 P.2d at 1269. From the context of this interrogation, it is clear that the statement of the detective did not constitute a promise. The actions of the defendant show that he did not treat the detective's statement as a promise. Therefore, by saying, "it's nothing that can't be worked out," the detective did not render the defendant's subsequent statement involuntary.

Having examined the entire record, *Davis v. North Carolina*, 384 U.S. 737, 741–42, 86 S.Ct. 1761, 1764, 16 L.Ed.2d 895, 898 (1966), and considered the totality of the interrogation, *Schneckloth*, 412 U.S. at 226–27, 93 S.Ct. at 2047–48, we find that the three statements were not promissory in nature, and they did not induce the defendant to make a statement. The defendant's fifth amendment rights were not violated, and the trial court did not err when it refused to suppress the defendant's statements.

## IV. VOIR DIRE

The defendant next contends that the trial court erred when it denied his request to declare a mistrial after voir dire. He bases his claim on two circumstances: (1) thirteen prospective jurors indicated some exposure to the case through the media; and (2) the judge commented that sitting on this jury would probably upset a prospective juror whose cousin had been murdered by the Tison gang.

### A. *Pretrial Publicity*

■■■■ It is not whether prospective jurors have heard of the crime, but their prior exposure to information about the crime that is the important factor in the defendant's right to an impartial jury. Prior knowledge of a case alone is insufficient to disqualify a juror. *State v. Chaney*, 141 Ariz. 295, 302, 686 P.2d 1265, 1272 (1984). A trial court can strike a panel due to exposure to pretrial publicity only when the defendant has shown that the jurors "have

formed preconceived notions concerning the defendant's guilt and that they cannot lay those notions aside." *Id.* (citing *State v. Mulligan*, 126 Ariz. 210, 214, 613 P.2d 1266, 1270 (1980)). A defendant must show that the jury was actually prejudiced by pretrial publicity, or that the publicity was so outrageous that prejudice could be assumed. *Murphy v. Florida*, 421 U.S. 794, 800–803, 95 S.Ct. 2031, 2036–38, 44 L.Ed.2d 589 (1975); *State v. Joseph Smith*, 123 Ariz. 231, 236, 599 P.2d 187, 192 (1979).

The court impaneled only three of the thirteen jurors who had been exposed to information about the crime, and each of the impaneled jurors stated that they could set that knowledge aside in reaching a verdict. The defense made no showing that the statements of those jurors were not credible. The trial court did not err in denying a mistrial.

### B. *Judge's Comment*

■■■■ The judge asked prospective jurors whether they could put their personal feelings aside and decide the case based on the evidence and instructions. One prospective juror answered, "My cousihn [sic] and his wife were killed by the Tyson [sic] gang, and I think listening to this type of testimony it would bother me." The judge responded, "It is probably going to be upsetting," and excused her. The defendant contends that the judge thus informed jurors of his personal opinion of the aggravated nature of this case, severely prejudicing the defendant. We disagree.

The comment by the judge simply acknowledged his agreement that the juror's past experiences could interfere with her objectivity in a murder trial. The comment did not imply that the defendant was guilty or that the crime charged was especially offensive. It was merely a sympathetic response to the obviously emotional condition of the prospective juror. The comment did not constitute error.

■■■■ Additionally, we note that the defendant failed to object to the impaneling of the jury. In fact, he expressly approved the panel. If counsel had timely objected,

the judge could, if necessary, have promptly corrected any error. Counsel must make his objection during voir dire or waive that right. *State v. Arnett*, 119 Ariz. 38, 50, 579 P.2d 542, 554 (1978). Moreover, he cannot object to the panel once he has approved it. *Id.* (citing *Glover v. State*, 273 Md. 448, 330 A.2d 201 (1975); *People v. Cobb*, 19 Ill.App.3d 520, 311 N.E. 2d 702 (1974)).

The trial court enjoys broad discretion in granting a mistrial, and we will reverse the lower court's ruling only if the court's conduct is palpably improper and clearly injurious. *State v. Coleman*, 122 Ariz. 130, 133, 593 P.2d 684, 687 (App.1978), *aff'd in part*, 122 Ariz. 99, 593 P.2d 653 (1979). The denial of the defendant's mistrial motion was not error.

## V. EVIDENCE

The defendant next contends that the trial court's various rulings on admission of evidence and argument of counsel constituted error. Specifically, he complains of the court's following rulings: (1) it permitted the deceased's mother to testify; (2) it restricted the defendant's cross-examination of a witness' drug history; (3) it declined to declare a mistrial when the prosecutor extended his closing argument beyond the facts of the case; (4) it admitted the murder weapon after closing arguments; and (5) it admitted Dr. Hinton's pre-Rule 11 screening report at the sentencing hearing.

### A. *Testimony of the Victim's Mother*

Defense counsel filed a motion *in limine* to exclude Ms. Powell's testimony because it was irrelevant and would inflame the jury. He was especially concerned that she would testify about the victim's life and background, as well as her feelings about her son's murder, to garner sympathy. The prosecution summarized her expected testimony: she would testify that her son, a marine, was visiting her and asked to borrow her car to "go out to have a beer;" the description of her vehicle; describing his appearance when he left; waking up the next day and finding that he had not

come home; calling the police and filing a missing persons report; that California authorities contacted her after finding her car in San Luis Obispo; finally, that she gave a statement to the Tucson police.

Defense counsel assented: "if they are going to do what they say, there's nothing of evidentiary value anyway and I will accept that." Ms. Powell's testimony subsequently conformed to that agreement, and the defendant has directed our attention to no testimony exceeding it. Therefore, the defendant cannot now complain that the trial court should have precluded that testimony. "[I]t can hardly be said that the court denied [the defendant] a right which [he] had waived." *Cobb*, 19 Ill.3d at 522, 311 N.E.2d at 704. Therefore, we find no error in the denial of the motion *in limine*.

### B. *Cross-examination of Witness' Drug History*

The state called David Bilodeau to testify concerning admissions the defendant made to him. The witness had a lengthy history of substance abuse but was not under the influence of drugs at the time the defendant spoke to him. The state sought to exclude on relevancy grounds evidence of the witness' drug history beyond his use at the time when he heard the defendant's admissions. Defense counsel argued that the history was admissible to explain discrepancies in Mr. Bilodeau's testimony and impeach his memory, but made no offers of proof beyond bare speculation. The court granted the state's motion.

A trial court should admit relevant evidence but exclude that which has little probative value when it would confuse issues, unfairly prejudice the jury, or invade the witness' privacy. 17A A.R.S., Rules of Evid., Rule 403; *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982). A witness' ability to perceive or recall critical facts is highly relevant to his credibility. Nonetheless, a trial judge does not abuse his discretion when he excludes testimony about a witness' psychiatric history when the defendant fails to make an offer of

proof that the witness' perception or memory was affected by his illness. *Id.,* 134 Ariz. at 513, 658 P.2d at 166–67.

█ Contrary to the state's assertion, because the evidence of Mr. Bilodeau's drug use history might affect his ability to accurately perceive and remember the defendant's statements, it could be relevant. Nevertheless, as in *Zuck,* the defendant failed to show that it would indeed be relevant through an offer to prove how it impaired his memory and perception. Without some basis to believe that Mr. Bilodeau's substance abuse affected him at the time, the trial court did not abuse its discretion when it granted the state's motion in limine.

C. *Closing Argument Exceeding the Facts*

█ In the rebuttal part of his closing argument, the prosecutor said,

Sometimes sitting at the prosecution table and listening to the defense attorney testify is one of the more difficult things we have to do, frankly.... If you come down here when you are done with your service in this case, come down to the Courthouse and watch some trials in progress, you will get a chance to hear much of what's just been said to you by [defense counsel] ... I'm sick to death of coming in here and on just about every trial listening to allegations about prosecutorial misconduct, police misconduct, witnesses lying, making up stories, a deal bringing somebody to fit in; you can do what you want in every case you hear.

By complaining of defense attorneys' tactics of displacing blame, and inviting the panel to attend other trials where it would hear reiterations of those arguments, the prosecutor exceeded the facts and law of the case at hand. Counsel should confine his argument to the pertinent law and facts of the case. *State v. Merryman,* 79 Ariz. 73, 75, 283 P.2d 239, 241 (1955). When he referred the jury to other cases, the prosecutor exceeded the limits of proper argument.

However, the defendant never objected to the argument. When counsel fails to object at trial, he is precluded from raising the matter on appeal unless the error is fundamental. *State v. Stoneman,* 115 Ariz. 594, 596, 566 P.2d 1340, 1342 (1977). Fundamental error affects the foundation of the case or deprives the defendant of a right essential to his defense. *State v. Gamble,* 111 Ariz. 25, 26, 523 P.2d 53, 54 (1974).

The prosecutor's frustration with defense attorneys' strategies does not rise to the level of fundamental error. It neither affects the merits of the case nor deprives the defendant of an essential right. Therefore, absent an objection, counsel is precluded from raising this matter on appeal. *Stoneman,* 115 Ariz. at 596, 566 P.2d at 1342. The defendant nonetheless asserts that the court should have declared a mistrial on its own motion. Because the error was not fundamental, the court was not obligated to declare a mistrial.

D. *Murder Weapon*

At trial, the state sought to introduce the murder weapon into evidence before it had established sufficient foundation. Upon objection, the court denied the request. The state later cured the foundation defects but forgot to have the weapon admitted into evidence. Realizing its mistake after closing arguments, the state requested and the court allowed admission of the weapon. The defendant complains that the foundation was still inadequate when the weapon was admitted, and he was prejudiced by drawing the jury's attention to the weapon just prior to deliberations.

█ Courts have broad discretion in permitting a party to reopen a case for admission of evidence. *State v. Taylor,* 112 Ariz. 68, 83, 537 P.2d 938, 953 (1975), *cert. denied,* 424 U.S. 921, 96 S.Ct. 1127, 47 L.Ed.2d 328 (1976). They do not abuse that discretion when they allow the state to reopen even after both sides have rested, as long as the state acts in good faith, and the result does not prejudice the defendant. *See State v. Thomas,* 110 Ariz. 120, 131, 515 P.2d 865, 876–77 (1973); *State v. Mendoza,* 109 Ariz. 445, 447–48, 511 P.2d 627, 630 (1973).

Reviewing the record, we disagree with the defendant's contention that the foundation was inadequate. The defendant stipulated to the foundation for admitting the gun into evidence, so he cannot now complain of insufficient foundation.

The only remaining question is whether the court should have excluded the weapon due to the delayed request for its admission. The trial judge properly exercised his discretion when he found that the state's tardiness was a product of simple inadvertence, not bad faith. In addition, the only prejudice that defendant alleges is that the weapon inflamed the jury just prior to deliberations. However, the jury had already retired before the state made its motion to admit the weapon; hence, the jury could hardly have been affected by it. Therefore, the trial court did not abuse its discretion when it admitted the murder weapon into evidence after closing argument.

### E. *Pre–Rule 11 Screening Report*

At the sentencing hearing, the court considered Dr. Hinton's pre-Rule 11 screening report in mitigation. The report contained information supporting several of the factors that the defendant asserted in mitigation. For example, it related serious personal problems that affected the defendant while he was growing up, and it recounted his substance abuse and psychiatric treatment histories. In particular, Dr. Hinton concluded that drug use probably reduced the defendant's judgment and compromised his impulse control to some extent at the time of the offense. Thus, the report presented important information of mitigating circumstances.

The defendant complains that admitting the report violated the foundation and hearsay rules of evidence. However, information relevant to mitigation can be presented at a sentencing hearing without regard to its admissibility under the rules of evidence for criminal trials. A.R.S. § 13–703(C). The defendant's assertion, therefore, has no merit. We therefore hold that the trial court did not abuse its discretion when it made the foregoing evidentiary rulings.

### VI. JURY INSTRUCTIONS

The defendant next contends that the trial court erred in three of its rulings concerning jury instructions. He alleges that the judge: (1) should not have instructed the jury to disregard codefendants' roles in the crime; (2) should have included a "lack of flight" instruction; and (3) should have added commentary instructing the jury that the two theories for first degree murder constitute alternate grounds.

### A. *Codefendants' Roles*

The defendant alleges that because his defense was that his codefendant fired the fatal shot, the court should not have instructed the jury to disregard other participants' role in the crime. The court instructed the jury as follows:

> It is no defense to the crimes charged against the defendant in this case that one or more other persons not now on trial might have also participated or cooperated in the crimes thus charged. The jury is not to speculate upon or even to consider the reasons for the absence from the Courtroom of such other persons if any. As the only matter before you for decision is the guilt or innocence of this particular defendant.

This instruction is a slight variation of R.A. J.I. No. 3.04 (1974).

We have previously determined that the identical instruction that the trial judge gave in this case should not be excluded based upon the theory that someone else committed the crime. *See State v. Cannon*, 148 Ariz. 72, 79, 713 P.2d 273, 280–81 (1985). We find no significant differences in the facts of the present case that persuades us to change our position in *Cannon*. We find no error.

### B. *Lack of Flight*

The defendant alleges that the court should have given the jury his "lack of flight" instruction so that the jurors could have considered his lack of flight in

their deliberations. The trial court refused the defense instruction.

Although flight is relevant to guilt, it does not necessarily follow that lack of flight is relevant to innocence. In an analogous case, we noted:

Instructions on flight seem to be premised on "... the supposition that with a consciousness of guilt, 'the wicked flee when no man pursueth' to avoid punishment," as observed by this Court through Justice Lorna E. Lockwood in *State v. Owen.* [citations omitted] Considering the rest of the proverb, "... but the righteous are bold as a lion," it would seem to follow that boldness infers innocence. Contemplated, however, is the state of mind of the guilty and the innocent. Verily, flight to escape detection or capture is circumstantial evidence of guilt. Absence of flight under other circumstances may seem far better calculated to avoid detection. Absence of flight does not necessarily reflect the state of mind. Would that detection of criminals were so simple.

*State v. Sorensen,* 104 Ariz. 503, 509, 455 P.2d 981, 987 (1969). In accordance with our holding in *Sorenson,* we find that the trial court committed no error when it denied a lack of flight instruction.

## C. *Alternate Murder Grounds*

The defendant asserts that the trial court should have added a sentence instructing jurors that felony murder was an alternate theory to premeditated murder. He wanted only "some minimal instruction."

▪ The instructions must be read as a whole to determine whether they adequately reflect the law. *State v. Haas,* 138 Ariz. 413, 425, 675 P.2d 673, 685 (1983). Moreover, if the instructions as a whole properly reflect the law in Arizona, *State v. Richardson,* 110 Ariz. 48, 50, 514 P.2d 1236, 1238 (1973), *cert. denied,* 415 U.S. 929, 94 S.Ct. 1439, 39 L.Ed.2d 487 (1974), and are "substantially free from error," *State v. Norgard,* 103 Ariz. 381, 383, 442 P.2d 544, 546 (1968), the defendant suffers no prejudice by their wording.

In the instant matter, the court presented the appropriate felony and premeditated murder instructions separately, as different grounds for a first degree murder conviction, but omitted the defendant's requested commentary. Because the instructions properly reflected Arizona law, the trial judge was not required to supplement them with the defense's commentary.

Moreover, we note that the jury was aware that the two theories of murder constituted alternate grounds. The prosecutors, in both closing statements as well as opening remarks, explained in detail the two theories *as alternative* means of finding the defendant guilty.

## VII. DEATH SENTENCE

### A. *Constitutionality*

The defendant next contends that the Arizona death penalty procedure is unconstitutional because: (1) it is facially invalid as cruel and unusual punishment; (2) it denies him his right to jury trial by making the judge the trier of fact at sentencing; (3) it impermissibly places the burden of proof of mitigation on the defendant; (4) it does not require proof beyond a reasonable doubt that the aggravating factors outweigh the mitigating ones; (5) it provides inadequate standards to measure the weigh to assign aggravating and mitigating factors; (6) its aggravating circumstance of "especially heinous, cruel or depraved" conduct is vague; (7) it restricts the judge's discretion by mandating capital sentencing when the judge makes certain findings; and (8) it fails to require the judge to enter a "special verdict" explaining each of his findings in detail.

▪ We have previously considered and rejected the first seven arguments and see no reason to change our position. *See State v. Richmond (Richmond I),* 114 Ariz. 186, 194–95, 560 P.2d 41, 49–50 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977) (death penalty is not cruel and unusual); *State v. Correll,* 148 Ariz. 468, 483–84, 715 P.2d 721, 736–37 (1986) (denial of jury sentencing, burden of proving mitigation on the defendant, no

proof beyond a reasonable doubt that aggravation outweighs mitigation, and inadequate standards to weigh the factors are not unconstitutional); *State v. Ortiz,* 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1981), *cert. denied,* 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982), *rev'd on other grounds, State v. Gretzler,* 135 Ariz. 42, 57 n. 2, 659 P.2d 1, 16 n. 2, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), ("heinous, cruel, or depraved" factor is not unconstitutionally vague); *State v. Bracy,* 145 Ariz. 520, 536, 703 P.2d 464, 480 (1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 898, 88 L.Ed.2d 932 (1986) (restricting judge's sentencing discretion is not unconstitutional).

■ We have not previously addressed the defendant's final constitutional challenge to the death penalty: that the judge's failure to specify the basis for his findings in greater detail than is required in A.R.S. § 13–703(D) violates the defendant's right to due process. The sentencing statute already requires the judge to return a special verdict setting forth the existence or nonexistence of the aggravating and mitigating factors listed in the statute. *See* A.R.S. § 13–703(D).

In the present matter, the judge fully complied with that statute. The defendant nonetheless complains that the judge should have set forth the basis for the findings in greater detail as did the judge in *State v. Ceja,* 126 Ariz. 35, 37–39, 612 P.2d 491, 493–95 (1980). We are not persuaded. Although we applaud the meticulous detail the judge applied in sentencing Ceja, we hold that due process requires no more than a clear listing of the factors involved; the defendant's novel claim does not rise to the level of constitutional error.

**B.** *Enmund/Tison Findings*

Because the jury entered a general verdict of guilty of first degree murder without specifying whether they based it on premeditated or felony murder, the defendant challenges the judge's *Enmund/Tison* finding. He alleges that the trial court misapplied the Supreme Court's test for felony murder sentencing set forth in *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and clarified in *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). Underlying that allegation is his contention that it was his codefendant, Robert Hoover, who actually shot the victim while the present defendant, who never intended that the victim be killed, simply waited in the car. The defendant therefore applies the *Tison* rule to his version of the facts and concludes that the trial court erred.

■ When the state advances both premeditated and felony murder theories, and the jury renders a general verdict of guilty, the judge must apply the *Enmund* test for felony murder in addition to the sentencing statute criteria for other grounds of murder to reach a capital sentence. *See State v. McDaniel,* 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983). Thus, he must decide whether the defendant killed, attempted to kill, or intended to kill, as well as find one or more aggravating and no outweighing mitigating factors.[1]

■ In the instant case, however, the trial judge rejected the defendant's contentions that it was not he, but his codefendant, who killed the victim. The judge found that the defendant was "the person that took the deceased Mr. Powell into the

---

1. The defendant also contends that the judge erred when he refused to admit at sentencing the jury foreman's testimony that the jury convicted on the basis of felony, not premeditated, murder. The defendant fails to explain how this affected his eighth amendment rights; presumably he sought that evidence to force the court to apply the *Enmund* test based on the theory the jury used to convict. Because the jury's grounds for conviction are irrelevant to the judge's *Enmund* findings, *Cabana v. Bullock,* 474 U.S. 376, 383, 106 S.Ct. 689, 695–96, 88

L.Ed.2d 704 (1986), the judge did not have to admit evidence of the jury's deliberations.

The defendant further contends that the trial court violated *Enmund* when it sentenced him to death after the jury had been instructed concerning accomplice liability. However, it is not the *jury's* grounds for conviction, but the *judge's* grounds for sentencing that must meet the *Enmund* test. Thus by giving that jury instruction, the judge did not implicate the *Enmund* test at all.

desert, put a gun to his head which resulted in his subsequent death." That finding was based on substantial evidence. *See id.,* 136 Ariz. at 199, 665 P.2d at 81.

In his statement to the police, the defendant admitted his participation throughout the incident, but credited Hoover with the killing. However, codefendant Sharold Ramsey testified that it was the defendant who took Powell at gunpoint into the desert. Before leaving, the defendant told the others to turn up the radio. He returned approximately five minutes later without Powell, commenting "that was loud," referring to the gunshot. Later, the defendant stated that he should have checked Powell's pulse, but he was sure that Powell was dead because he shot him in the head.

The defendant attempted to impeach Ramsey's testimony by showing that her self-interest and interest in protecting her lover, Hoover, motivated her to lie about who committed the killing. Nonetheless, her story was largely corroborated by David Bilodeau who reported the murder to the police well before the police found and questioned Ramsey.

The defendant attempted to impeach Bilodeau's testimony by showing his interest in receiving favorable treatment from federal authorities in an unrelated matter. The defense presented the inconsistencies between Bilodeau's original statement to the police that the defendant had stated to him, "we killed," and his trial testimony in which he stated that the defendant had stated, "I killed." Bilodeau's pending federal prosecution may have provided an incentive for his *report* of the incident, but the *substance* of the report was substantially consistent with Ramsey's version of the facts.

Having reviewed the record, we find substantial evidence to support the trial judge's finding that the defendant killed the victim. Therefore, the trial judge, following the procedure in *McDaniel,* did not err in making the *Enmund* finding.

## C. *Independent Review of Sentence*

Our task is to scrutinize the facts of the present case to determine whether the trial judge erred in his special verdict on the aggravating and mitigating findings.

### 1. Aggravating Circumstances

The trial judge found two aggravating factors: the defendant committed the offense in an especially heinous, cruel, or depraved manner, and he did so for pecuniary gain. We independently review the record to determine whether the facts establish the presence or absence of the aggravating factors to sustain the imposition of a death sentence. *Richmond I,* 114 Ariz. at 196, 560 P.2d at 51. We must further ensure that aggravating factors were proven beyond a reasonable doubt and all appropriate mitigation was considered. *State v. LaGrand,* 153 Ariz. 21, 34, 734 P.2d 563, 576, *cert. denied,* —— U.S. ——, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). We consider the aggravating circumstances separately.

#### a. *Especially Heinous, Cruel or Depraved*

■ First, a crime is committed in an especially cruel manner when the perpetrator inflicts mental anguish or physical abuse before the victim's death. *Correll,* 148 Ariz. at 479–80, 715 P.2d at 733; *Gretzler,* 135 Ariz. at 51, 659 P.2d at 10. Mental anguish includes a victim's uncertainty as to his ultimate fate. *Correll,* 148 Ariz. at 480–81, 715 P.2d at 733; *State v. McCall,* 139 Ariz. 147, 161, 677 P.2d 920, 934 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). For instance, in *Correll,* armed assailants bound the victims and drove them into the desert. We recognized that

this must have caused each victim great distress. This fear and worry must have greatly increased when they were loaded into Cady's car and driven into the desert. At no time could they be certain what these two armed men intended beyond robbery.

148 Ariz. at 480, 715 P.2d at 733.

■ In the present case, we find ample evidence that Powell suffered substantial

mental anguish prior to his death. As in *Correll*, armed assailants abducted and drove him out to a remote area of the desert at night. Powell could not be certain of his fate, but as the city lights grew dim behind him, his fears for his life must have multiplied. He was so clearly terrified by the time they stopped that Sharold Ramsey tried to reassure him that they would not hurt him.

But even if Powell took temporary refuge in her assurances, he soon realized that they meant to kill him. The defendant and Hoover forced Powell to lie face down on the ground outside the car while they argued over his fate. Although they had agreed to tie him up, the defendant, armed only with a gun but no rope to tie him, marched Powell off into the darkness, telling his companions to turn up the radio. The implication was clear to Powell, who was so upset that he urinated on himself and begged the defendant not to kill him. This evidences that Powell suffered great mental anguish both during the car ride when his fate was uncertain and in his final march into the desert when his fate had become certain.

 The state also asserts that a finding of especial cruelty can be based upon Powell's physical anguish from the wound, exposure, and conscious suffering in the desert. We have previously indicated that it is the foreseeability of causing the victim physical suffering after inflicting the mortal blow, rather than what surprisingly transpired subsequently, that guides our analysis. *See State v. Bernard Smith*, 146 Ariz. 491, 504, 707 P.2d 289, 302 (1985). In the present case, the defendant placed the gun to Powell's head, held his head immobile, and pulled the trigger, intending to kill the victim immediately. Because Powell's survival and longevity were neither reasonably foreseeable nor intended, his physical suffering falls outside the definition of cruelty as outlined by this court. *See id.*, 146 Ariz. at 504, 707 P.2d at 302. The trial court's finding of cruelty is supported by the mental torment of the victim prior to the shooting rather than the events which took place afterwards.

 Second, a crime is committed in an especially depraved manner when the perpetrator relishes the murder, evidencing debasement or perversion. *Gretzler*, 135 Ariz. at 51–52, 659 P.2d at 10–11. For instance, staging a victory celebration after the murder in which the killers sang "We Are the Champions" evidenced depravity. *State v. Lambright*, 138 Ariz. 63, 75, 673 P.2d 1, 13–14 (1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984). In addition, commenting that the defendant "squealed like a rabbit" when he was shot could support a finding of depravity. *State v. Graham*, 135 Ariz. 209, 212, 660 P.2d 460, 463 (1983) (but other circumstances suggested that Graham was motivated by peer pressure, not a depraved mind).

 Some circumstances suggest that the present defendant also committed the offense in a depraved manner. After executing the victim, the trio bought hamburgers at a restaurant and went home to eat and drink beer. However, the state produced no evidence that this was a "victory feast." On the contrary, the trio had not eaten because they had no money; their dinner probably provided basic sustenance rather than occasion for celebration.

While drinking beer with his hamburgers, the defendant stated that he "never seen a man pee in his pants before." In argument, the state emphasized that remark as evidence of his callous fascination with the murder. We agree. The statement shows an indifference to the suffering of the victim and evidences a sense of pleasure which the defendant took in the killing.

We have often emphasized that the statutory expression of "especially heinous, cruel, or depraved" is phrased in the disjunctive, *e.g.*, *State v. Wallace*, 151 Ariz. 362, 366, 728 P.2d 232, 236 (1986), *cert. denied*, 483 U.S. 1011, 107 S.Ct. 3243, 97 L.Ed.2d 748 (1987), hence a finding of any one of those three factors suffices to constitute an aggravating circumstance. *State v. Libberton*, 141 Ariz. 132, 139, 685 P.2d 1284, 1291 (1984). The clear evidence of cruelty is sufficient to sustain the trial judge's finding of that aggravating factor,

but we believe that the evidence also supports the finding of depravity.

■ Third, to prove pecuniary gain, the state must show the murderer's motivation was the expectation of a pecuniary benefit. *LaGrand,* 153 Ariz. 21, 35, 734 P.2d 563, 577 (1987) (citing *State v. Carriger,* 143 Ariz. 142, 161, 692 P.2d 991, 1010 (1984), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985)). The killing and robbery need not occur simultaneously, *see Correll,* 148 Ariz. at 479, 715 P.2d at 732, but the purpose of the killing must be to further the defendant's motive of pecuniary gain from the robbery. *Hensley,* 142 Ariz. 598, 603–04, 691 P.2d 689, 694–95 (1984).

For instance, when a robber executes his victim to facilitate his escape and hinder detection, so as to successfully take and keep the stolen items, he furthers his pecuniary gain motive. *Hensley,* 142 Ariz. at 604, 691 P.2d at 694 (to prevent any witnesses from identifying the defendant after the bar robbery, he shot each witness in execution style); *State v. Harding,* 141 Ariz. 492, 500, 687 P.2d 1247, 1255 (1984) (defendant bound and gagged robbery victim, resulting in death, to facilitate the robbery and evade detection).

■ In the present case, the defendant killed Powell to facilitate his robbery. By eliminating his victim, the defendant expected to have time to successfully flee the state with the victim's car and money, thus facilitating his pecuniary goal. The evidence fully supports the trial judge's finding of pecuniary gain as an aggravating circumstance.

### 2. Mitigating Circumstances

■ The defendant contends that the trial judge erred when he found no mitigation sufficient to require leniency. Specifically, the defendant alleges that the judge should have found that the defendant's mental capacity was significantly impaired, his actions did not create a grave risk of causing death, and his relative youth mitigated his criminal conduct. The court considered the defendant's mental impairment and age, in addition to numerous non-enumerated mitigating factors, and found no mitigating circumstances sufficiently substantial to call for leniency. The defendant also raises for the first time on appeal the factor of not creating a grave risk of causing death to another as a mitigating circumstance.

The defendant alleges that his mental lapses, attributed to a history of substance abuse, required leniency. The defendant was not under the influence of alcohol or drugs at the time of the offense; he had shared "a couple of joints" of marijuana with four other persons, but was unaffected by that brief usage. Instead, he bases his claim of mental impairment on memory impairment.

Though the judge should consider any evidence of mental impairment to mitigate capital punishment, *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), some types of impairments clearly bear more weight than others. For instance, sociopathology and personality disorders have not sufficed to tilt the balance in favor of leniency. *State v. Gerlaugh,* 144 Ariz. 449, 459, 698 P.2d 694, 704 (1985); *Richmond I,* 114 Ariz. at 197–98, 560 P.2d at 52–53. Those differ in degree from a slow, dull, brain-damaged defendant whose judgment and rationality are marginal. *See Ceja,* 126 Ariz. at 40, 612 P.2d at 496 (because Ceja was not the slow, brain-damaged individual counsel portrayed him as, his minor personality defects did not require leniency). Mental impairments have far greater mitigating effect because they may evidence an inability of the defendant to control his conduct. *State v. Doss,* 116 Ariz. 156, 163, 568 P.2d 1054, 1061 (1977). In the present matter, memory impairment played no role in affecting the defendant's control and by no means caused Powell's death.

Therefore, we find that the defendant's alleged drug-related memory lapses do not warrant reduction of the death sentence. Moreover, before sentencing, the court granted the defendant's request for a psychiatric evaluation, appointing Dr. Gurland, who was the psychiatrist that the defen-

dant had wanted appointed for the Rule 11 examination. Dr. Gurland examined the defendant, agreeing that the defendant may have been subject to drug-related blackouts, but not psychoses or other mental defects. Thus, the defendant's condition was due solely to his abuse of drugs, and his condition did not affect his ability to control his conduct.

▮ Second, the defendant alleges that the judge should have mitigated the death sentence due to the defendant's age, twenty. When the judge considers age in mitigation, he weighs evidence of experience and maturity. *State v. Gillies (Gillies I),* 135 Ariz. 500, 513, 662 P.2d 1007, 1020 (1983). An age of twenty years may be some evidence but is not dispositive of inexperience and immaturity, and we have upheld findings of no mitigation of death sentences in other cases involving defendants of similar age. *E.g., Gerlaugh,* 144 Ariz. at 461, 698 P.2d at 706; *State v. Gillies (Gillies II),* 142 Ariz. 564, 571, 691 P.2d 655, 662 (1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985). In addition, the extent and duration of a defendant's participation in a murder can evidence maturity. *Gillies II,* 142 Ariz. at 571, 691 P.2d at 662. Thus carrying out a plan over a significant period of time reflects delay of gratification, which in turn evidences relative maturity; impulsive acts reflect relative youth and immaturity.

▮ In the present matter, the defendant participated substantially throughout the entire course of the crime. Besides the responsibility he shared with his codefendants, the defendant accosted and detained Powell in the bar parking lot, singlehandedly executed him in the desert, and approached David Bilodeau seeking dynamite to destroy the victim's car. This deliberate action minimizes the effect of the defendant's relative youth. Thus, we find that his age is insufficient to call for leniency.

▮ Third, the defendant belatedly alleges that the court should have mitigated the sentence because he could not have

reasonably foreseen that his conduct would create a grave risk of death. He bases his argument on his contention that his codefendant executed Powell. However, the trial judge found, contrary to the defendant's contention, that the defendant killed Powell, and there is substantial evidence to support that conclusion. The defendant therefore cannot now allege that he could not have reasonably anticipated that shooting Powell in the head at close range might risk killing him. We find no merit in the defendant's contention that his conduct would not have foreseeably created a grave risk of death.

In addition, we have independently reviewed the record for evidence of mitigation beyond those issues presented on appeal. However, we find no mitigating circumstances sufficient to call for lenience in sentencing.

### D. *Proportionality Review*

▮ As part of our independent review,[2] we must also conduct a proportionality review to determine whether "the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Wallace,* 151 Ariz. 362, 370, 728 P.2d 232, 240 (1986); *Richmond I,* 114 Ariz. at 196, 560 P.2d at 51.

For this review, we have considered those cases in which the trial judge sentenced the defendant to death based upon a finding of two aggravating circumstances and no mitigating circumstances sufficiently substantial to require lenience. *E.g., State v. Martinez–Villareal,* 145 Ariz. 441, 702 P.2d 670 (1985), *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985); *State v. Fisher,* 141 Ariz. 227, 686 P.2d 750, *cert. denied,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984); *State v. James,* 141 Ariz. 141, 685 P.2d 1293 (1984), *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed. 2d 332 (1984); *State v. Libberton,* 141 Ariz. 132, 685 P.2d 1284 (1984). In addition, we

**2.** Although the defendant did not challenge the proportionality of his sentence, we are still obligated to conduct a proportionality review of the sentence in this case with that imposed in similar cases. *Richmond I,* 114 Ariz. at 196, 560 P.2d at 51.

have considered those cases in which we have reduced the death sentence to life imprisonment. *E.g., Graham,* 135 Ariz. 209, 660 P.2d 460; *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981); *State v. Madsen,* 125 Ariz. 346, 609 P.2d 1046 (1980), *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980); *State v. Lujan,* 124 Ariz. 365, 604 P.2d 629 (1979); *State v. Brookover,* 124 Ariz. 38, 601 P.2d 1322 (1979). Finally, we have considered the sentences in the present case that the defendant's codefendants received for their part in the same crime.

Based upon our review of those decisions, we find that the death penalty in the present case is proportional to sentences imposed in similar cases.

## VIII. PRISON TERM SENTENCES

The defendant next challenges the sentences imposed on the noncapital felonies. Specifically, he contends that the judge erred when: (1) he considered victim impact evidence; and (2) he ordered that the noncapital sentences run consecutively to his death sentence.

### A. *Victim Impact*

Among his death penalty issues, the defendant contends that the trial judge erred when he considered letters of family, friends, and the public in sentencing the defendant to death. He asserts that this violated the restrictions on aggravating factors of A.R.S. § 13–703(F) as well as the eighth amendment. *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).

The Arizona statutory death penalty procedure restricts the trial judge to the consideration of the aggravating circumstances set out in A.R.S. § 13–703(F). The death penalty may not be considered unless the trial judge finds the existence of one of the statutory aggravating circumstances. The impact of the murder upon the family of the victim has never been a statutory aggravating circumstances under the Arizona death penalty statute.

Under the provisions of A.R.S. § 13–702(D), which applies to noncapital sentences, one of the aggravating circumstances that the trial judge must consider is:

9. The physical, emotional and financial harm caused to the victim or, if the victim has died as a result of the conduct of the defendant, the emotional and financial harm caused to the victim's immediate family.

However, A.R.S. § 13–702 also provides in subsection G:

Nothing in this section shall affect any provision of law which imposes the death penalty, which expressly provides for imprisonment for life or which authorizes or restricts the granting of probation and suspending the execution of sentence.

Thus, the statutory scheme for noncapital sentencing is separate and distinct from that applying to the sentence of death or life imprisonment. The ruling in *Booth,* barring the consideration of victim impact evidence, applies only to death penalty cases. *Id.,* 482 U.S. at 509 n. 12, 107 S.Ct. at 2536 n. 12. There is no suggestion in *Booth* that victim impact evidence may not be used in noncapital felony sentencing.

■ Contrary to the defendant's contention, the judge did not consider victim impact evidence in the capital sentence, but did in sentencing for the defendant's conviction on the non-capital felonies. When the judge indicated he intended to consider the letters in sentencing, he stated that they did not fall under any provisions of the death sentencing statute. It is obvious that he intended to consider that evidence only in determining the sentence to be imposed on the noncapital felony convictions for armed robbery, kidnapping, and theft by control. The trial judge's action is further substantiated by his clear listing of the factors he considered for each type of sentence. The trial judge based the death penalty only on aggravating circumstances of cruel, heinous, or depraved conduct, and pecuniary gain, but he expressly indicated that he arrived at the sentences for the other felonies based upon three aggravating circumstances that included victim impact.

Therefore, the judge only weighed victim impact in sentencing the defendant on the noncapital felonies. We find no error.

## B. *Consecutive Sentencing*

■ The defendant also contends that the trial court erred when it sentenced him to concurrent terms for the robbery, kidnapping, and theft convictions that run consecutively to the death penalty for first degree murder. He relies on A.R.S. § 13–604(H) and the holding of *State v. Perkins*, 144 Ariz. 591, 699 P.2d 364 (1985), barring consecutive sentences for "spree" offenses arising from the same occasion.

A.R.S. § 13–604(H) governs sentence enhancement, not consecutive sentencing. *State v. Noble*, 152 Ariz. 284, 287, 731 P.2d 1228, 1231 (1987). Additionally, we expressly overruled *Perkins* to the extent that it suggests that § 13–604(H) limits a judge's ability to impose consecutive sentences. *Id.*, 152 Ariz. at 288, 731 P.2d at 1232.

Rather, our rule for consecutive sentencing is found in Arizona's multiple punishment statute, A.R.S. § 13–116. In *State v. Tinghitella*, 108 Ariz. 1, 3, 491 P.2d 834, 836 (1971), we adopted the "identical elements" test to determine when consecutive sentences violated A.R.S. § 13–116 (then A.R.S. § 13–1641). *State v. Rumsey*, 130 Ariz. 427, 430, 636 P.2d 1209, 1212 (1981), *affd.*, 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed. 2d 164 (1981). Under that test, the judge must eliminate all elements of one charge and determine whether the remaining facts support the other charges. *Id.; Tinghitella*, 108 Ariz. at 3, 491 P.2d at 836.

There was sufficient evidence in the record to independently support each of the charges. We therefore hold that the judge did not err by the consecutive sentencing in this matter.

## IX. INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant finally contends that he was not afforded effective assistance of counsel. He advances four challenges to his counsel's assistance, and we raise an additional concern. We address our concern first.

After the trial judge imposed the sentence in this case he asked counsel if he wanted to represent the defendant on appeal. Counsel replied, "I don't think that's best now, considering some of the issues." Though counsel did not specify those issues, it is reasonable to assume from counsel's comment that an ineffective assistance of counsel claim would be an issue. The trial judge nevertheless appointed him to continue representing the defendant on appeal.

■ We believe that the trial judge should have inquired further into the matter before ordering counsel to continue to represent his client on appeal. It is important that appellate counsel be free to advance or reject the issue of effectiveness of trial counsel. We recognize that a defendant, after conviction, is often dissatisfied with the performance of his trial counsel. However, generalized dissatisfaction, without alleging a basis for an ineffective assistance claim, does not suffice to disqualify counsel on appeal. Despite the foregoing, when defense counsel advises the trial court that ineffective assistance of counsel may be an issue on appeal, the better practice is that the trial court should appoint different counsel to represent the defendant on appeal.

Following the trial judge's orders to represent the defendant, counsel directs our attention to four instances in which he alleges he acted ineffectively: (1) he focused his arguments on the distinction between "not guilty" and "innocent" instead of attacking weaknesses in the state's case; (2) he failed to raise at the suppression hearing the detective's promises to the defendant; (3) he failed to timely file a request for a Rule 11 examination; and (4) he stipulated to crucial facts rather than presenting witnesses at trial.

The Supreme Court set forth the standard for courts to apply in evaluating ineffective assistance of counsel claims. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). First, the defendant must show

that counsel's performance was deficient. *Id.* For that, he must specify acts and omissions of counsel that allegedly constituted ineffective assistance. *State v. Santanna,* 153 Ariz. 147, 149, 735 P.2d 757, 759 (1987). Second, the defendant must show that the deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To show that, the defendant must be able to demonstrate a "reasonable probability" that the verdict might have been affected by the error. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *State v. Schossow,* 145 Ariz. 504, 508, 703 P.2d 448, 452 (1985); *State v. Nash,* 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); *State v. Lee,* 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984).

We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. In addition, we must evaluate counsel's performance prospectively. *Id.* Thus, the defendant bears a heavy burden to overcome the presumption that counsel's action "might be considered sound trial strategy" at the time. *Id.* (citing *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

■ We preliminarily note that defense counsel in the present matter stretches the bounds of credibility when he claims that he should have argued that his client was innocent. Counsel had to realize from overwhelming evidence of involvement in the crime that his client was not innocent. In addition, the defendant's claim fails to overcome the presumption that his counsel made a sound tactical decision. *See Id.* Moreover, the second and third claims are rendered moot by our holdings that the detective's statement did not constitute a promise and the defendant was not entitled to a Rule 11 evaluation. *See supra,* Sections III, I(A). We turn to the fourth allegation.

■ The defendant's fourth claim, that counsel should not have stipulated to certain facts, may evidence defects in counsel's assistance, but it fails to meet the second prong of the *Strickland* test, *i.e.,* that the deficiencies prejudiced the defendant. The defendant offers no more than speculation concerning prejudice: the alleged errors "potentially [had] great impact on the ultimate outcome." To show sufficient prejudice, the defendant must point to actual bias he suffered. *State v. Richmond (Richmond II),* 136 Ariz. 312, 317, 666 P.2d 57, 62, *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). Mere speculation of prejudice will not suffice. *Santanna,* 153 Ariz. at 150, 735 P.2d at 760. Although counsel's performance was at times deficient, we find that it did not prejudice the defendant. We hold, therefore, that defense counsel's conduct did not deprive the defendant of his right to effective assistance.

In conclusion, we have examined the entire record for fundamental error as required by A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), and find none. We affirm the convictions and sentences.

GORDON, C.J., and CAMERON, J., concur.

FELDMAN, Vice Chief Justice, concurring.

There is no doubt that Walton was a participant in the kidnapping and robbery that eventually led to the victim's murder. Hence, there is no doubt that Walton is guilty of (felony) first degree murder. At the outset, the only issue of consequence in this case was whether Walton's punishment should be life imprisonment or death. The death penalty could be imposed only if Walton was the actual killer or acted, at the least, with reckless indifference to human life. *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 1678, 95 L.Ed.2d 127 (1987); *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

Following the aggravation/mitigation hearing, the trial judge sentenced Walton to death, finding that he had fired the fatal shot. This finding is the issue on appeal.

Walton denies firing the shot. In his confession to the police, he accuses Hoover of the actual killing. Hoover, of course, accuses Walton. This is the so-called "mirror image accusation"—each of two very culpable defendants points the finger at the other, seeking some measure of leniency for himself. Hoover's girlfriend, given a very generous plea bargain, unsurprisingly supports Hoover. A witness, Bilodeau, relating one of Walton's admissions, supported Walton in his statement to the police, but more or less supported Hoover in his trial testimony. It is fair to say that given their records, their characters, and the circumstances in which each of these individuals found him or herself, not one of them is especially worthy of belief.

Nor does the physical evidence help us decide who actually shot the victim. Walton owned the murder weapon, but the police found it and the victim's car in Hoover's possession when they apprehended Hoover and his girlfriend in California sometime after the crime in question.

Evidently the jury also found the question of who actually shot the victim difficult. From the question they asked the court, let alone the statement contained in the foreman's affidavit offered at the mitigation hearing, it is obvious that the jury was unable to decide whether Walton was the actual killer. Under the facts of this case, if Walton was the killer, he was certainly guilty of premeditated murder, but it appears the jury was unable to agree on such a finding.

Thus, this case illustrates a serious problem. The majority quite correctly holds that the United States Supreme Court has instructed us that *Enmund* findings relate only to eighth amendment issues, may be made at any stage of the proceedings, and not necessarily by the jury. *Cabana v. Bullock,* 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986). Moreover, the Court has not required us to adopt any particular procedure and has left each state free to adopt its own procedure in making the *Enmund* findings. *Id.* at 385, 106 S.Ct. at 697.

Exercising the discretion later granted us in *Cabana,* in *State v. McDaniel,* 136 Ariz. 188, 665 P.2d 70 (1983), we held that because there is only one crime of first degree murder, and "where the jury might have found the defendant guilty of [either] first degree murder based on a felony murder theory" or premeditated murder because both theories were submitted to the jury, the trial judge must then make the *Enmund* findings himself. *Id.* at 199, 665 P.2d at 81.

In my view, developments since *Enmund* and *McDaniel*—particularly *Tison* with its standard of reckless indifference— and our experience with the *McDaniel* procedure require a reexamination of the *McDaniel* procedure. In a system that values trial by jury, it seems anomalous to allow a judge to resolve the only true factual issue in the case and, in doing· so, to reach a result that may be directly contrary to the jury's finding. Apparently here, the judge's finding was evidently one that the jury considered but was unable to reach.

If we continue to follow the *McDaniel* procedure, we may well produce decisions that conflict with the jury trial principles espoused by the United States Supreme Court in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and by this court in *State v. Hurley,* 154 Ariz. 124, 741 P.2d 257 (1987), and *State v. Powers,* 154 Ariz. 291, 742 P.2d 792 (1987); *see also Adamson v. Ricketts,* 865 F.2d 1011, 1022–1029 (9th Cir.1988) (en banc) (finding unconstitutional Arizona's death penalty statute because, *inter alia,* it allows the sentencing judge to find the evidence of the elements of the crime of "capital murder").

I believe that, at the very least, we must in the future consider requiring the jury to receive a separate verdict form for the premeditated murder theory in cases that have been submitted to the jury on both felony murder and premeditated murder theories. This use of separate verdict forms would give the judge in sentencing and this court in exercising its responsibility to review death penalty cases the valu-

able benefit of an actual jury finding, and we would also avoid many of the questions that afflict courts in reviewing death penalty cases.

MOELLER, Justice, concurring.

I agree with Vice Chief Justice Feldman's suggestion that we should adopt, for future cases, the practice of submitting separate verdict forms when, in a potential death penalty case, the case is submitted to the jury on both premeditated murder and felony murder theories. In my opinion, such a change in practice would be prudent in light of developments which have occurred since the existing practice was approved in *McDaniel* and would, I believe, be of great assistance to trial judges and to judges of this court who are attempting to resolve the increasingly complex issues presented by death penalty cases. To this extent, I join in his concurrence.

NOTE: This Opinion is corrected to reflect that the trial counsel for Defendant/Appellant was Thomas E. Higgins and that the appellate counsel was Harold L. Higgins.