**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOE CLARENCE SMITH, *Petitioner-Appellant*, | No. 14-99008 |
| | D.C. No. |
| v. | 2:12-cv-00318-PGR |
| CHARLES L. RYAN; RON CREDIO, *Respondents-Appellees.* | OPINION |

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, Senior District Judge, Presiding

Argued and Submitted December 8, 2015
San Francisco, California

Filed May 26, 2016

Before: Richard A. Paez, Richard R. Clifton,
and John B. Owens, Circuit Judges.

Opinion by Judge Paez

**SUMMARY**[*]

**Habeas Corpus / Death Penalty**

The panel affirmed the district court's denial of Arizona state prisoner Joseph Clarence Smith's 28 U.S.C. § 2254 habeas corpus petition challenging his death sentence, imposed at 2004 resentencing proceedings, for the murders of Sandy Spencer and Neva Lee.

The panel held that Smith's contention that the trial court's admission of testimonial hearsay during the aggravation phase of resentencing proceedings violated his Sixth Amendment confrontation rights is foreclosed by *Williams v. New York*, 337 U.S. 241 (1949), which held that the Confrontation Clause does not bar courts from considering unconfronted statements during sentencing proceedings.

The panel held that in light of Smith's reliance on his sexual sadism diagnosis and the U.S. Supreme Court's pronouncement that the prosecution enjoys wide latitude in admitting rebuttal evidence, it was reasonable for the Arizona Supreme Court to conclude that the prosecution's introduction of substantial evidence of Smith's prior crimes during the penalty-phase hearings fell within the boundaries of due process. The panel held that introduction of this rebuttal evidence did not violate the Eighth Amendment. The panel held that any change between Arizona's 1970's and 2003 capital sentencing statutes was procedural rather than

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

substantive, and that the state trial court's rejection of Smith's claim that admission of the rebuttal evidence during the 2004 penalty-phase hearings violated his rights under the Ex Post Facto Clause was therefore not contrary to nor an unreasonable application of *Carmell v. Texas*, 529 U.S. 513 (2000).

The panel held that any vagueness challenge to the application of the Arizona (E)(2) aggravator (for a previous conviction for a felony involving the use or threat of violence on another person) fails because both the trial court and the Arizona Supreme Court applied the narrowed definition of the aggravator. The panel held that application of the (E)(2) aggravator to the facts of Smith's case was not contrary to nor an unreasonable application of clearly established federal law.

The panel held that the Arizona Supreme Court's rejection of Smith's argument that application of the Arizona (E)(6) aggravator (for offenses committed in an especially heinous, cruel, or depraved manner) violates the Eighth Amendment was not an unreasonable application of clearly established federal law.

The panel held that because Smith cannot establish prejudice from counsel's failure to obtain brain scans, his claim of ineffective assistance at his 2004 resentencing proceedings is not substantial, and his procedural default on that claim cannot be excused under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

**COUNSEL**

Michael L. Burke (argued) and Kelly L. Culshaw, Assistant Federal Public Defenders, Jon M. Sands, Federal Public Defender, Office of the Arizona Federal Public Defender, Phoenix, Arizona, for Petitioner-Appellant.

Jon G. Anderson (argued), Assistant Attorney General, Thomas C. Home, Attorney General, and Jeffrey A. Zick, Chief Counsel, Office of the Arizona Attorney General, Phoenix, Arizona, for Respondent-Appellee.

**OPINION**

PAEZ, Circuit Judge:

In 1977, Joseph Clarence Smith, Jr. was convicted of two murders and sentenced to death. This is the second time we have reviewed Smith's habeas challenge to his death sentence. In *Smith v. Stewart*, 189 F.3d 1004 (9th Cir. 1999), we reversed in part and ordered that a writ of habeas corpus issue directing the State of Arizona to resentence Smith for the murders of Sandy Spencer and Neva Lee. Smith was resentenced to death in 2004 for each murder. After exhausting his remedies in state court, Smith filed a new petition in federal court. Applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, the district court again denied relief. We have jurisdiction under 28 U.S.C. § 2253, and we affirm.

## I.

## A.

In 1973, Smith was convicted of raping Alice Archibeque. While on probation for the Archibeque rape, Smith raped Dorothy Fortner and killed Sandy Spencer and Neva Lee. Smith was convicted of the Fortner rape and in subsequent proceedings he was convicted of murdering Spencer and Lee and sentenced to death.

In our 1999 opinion, we summarized the facts of the underlying murders and trial court proceedings. For context, we repeat that summary here:

> On January 1, 1976, officials of the Maricopa County Sheriff's Department found the nude body of Sandy Spencer in the desert outside Phoenix. One month later in a different desert location, police discovered the nude body of Neva Lee. Both teenage hitchhikers had been suffocated by having dirt forced into their mouths, which were taped shut. The assailant stabbed both women multiple times, punctured them with needles, and bound their wrists with rope.

> Smith, who was on probation from a rape conviction, became the prime suspect. Police put him under surveillance. When that failed to produce probable cause for an arrest, police had a female officer pose as a hitchhiker to lure Smith into committing false imprisonment or battery. He eventually

picked up the officer, took her to his father's machine shop, and grabbed her by both arms. After a prearranged signal, police entered and arrested him for false imprisonment.

During Smith's imprisonment, police questioned him about the Lee and Spencer murders. At first, he denied his involvement. But months later, at his own initiation, Smith gave investigators a bizarre account of the Lee slaying. He told police that he was present at the crime because a friend, John Jameson, forced him at gunpoint to drive the victim to the desert. Once there, Jameson ordered Lee to have sexual intercourse with Smith in order to frame Smith for her rape. Smith said Jameson then decided to kill Lee. His account conflicted with some physical evidence found at the scene. Smith later contended that he told police no such story.

Smith went on trial for the Lee murder first. Throughout the trial, he maintained his innocence, contending that other people committed the crime and that investigators conspired to frame him. Jameson testified at the trial. He denied being present at the murder, but said that a man known as "Squirrel" bragged about killing two women and showed Jameson pictures of the dead women. The jury returned a general verdict finding Smith guilty of murder.

Smith then went on trial for the Spencer slaying. The following day, he pleaded guilty to the crime shortly after Di Anne Jameson—Smith's girlfriend, John Jameson's ex-wife, and a key prosecution witness—told the court that she had been improperly contacted by a defense investigator and by Smith's mother. During the plea colloquy, the prosecutor expressed doubts about Smith's emotional stability to enter a voluntary plea. Nonetheless, the trial court accepted the plea. Three weeks later, Smith unsuccessfully sought to withdraw the plea, explaining that he had only pleaded guilty out of concern that his parents and Ms. Jameson would be arrested.

*Smith*, 189 F.3d at 1006–07. After the sentencing hearing for both convictions, the trial judge found three aggravating circumstances warranting the death penalty and no mitigating circumstances. *Id.* at 1007. The judge sentenced Smith to death for each of the murder convictions.

On direct appeal in 1979, the Arizona Supreme Court affirmed Smith's convictions but remanded his case for resentencing because Arizona had revised its capital sentencing scheme to permit defendants to present additional mitigating evidence. *Id.* at 1007 & n.2; *see also State v. Watson*, 586 P.2d 1253, 1257 (Ariz. 1978) (invalidating as unconstitutional the capital sentencing scheme's limit on defendants' right to present mitigation evidence). Notwithstanding the opportunity to present additional mitigating evidence at Smith's resentencing, Smith's counsel simply resubmitted the same evidence he had presented in the

prior proceeding. *Smith*, 189 F.3d at 1007. The trial judge again found no mitigating circumstances and sentenced Smith to death for each of the murders of Lee and Spencer. *Id.* at 1008. On direct appeal for the second time, the Arizona Supreme Court affirmed Smith's death sentences. *Id.*

After unsuccessfully seeking post-conviction relief in state court, Smith filed a federal habeas petition under 28 U.S.C. § 2254 challenging both his convictions and death sentences. *Id.* at 1008. In 1999, we concluded that Smith's counsel performed deficiently at the resentencing proceeding. *Id.* at 1014. We reversed in part and ordered the district court to issue the writ and direct that Smith be resentenced. *Id.*

## B.

In 2002 the Arizona legislature responded to the U.S. Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002), by shifting from judge to jury the role of finding facts necessary to impose the death penalty. *See* 2002 Ariz. Legis. Serv. 5th Sp. Sess. Ch. 1 § 3 (West); *see also State v. Glassel*, 116 P.3d 1193, 1202 (Ariz. 2005). This change, coupled with the time necessary for counsel to gather evidence and prepare, delayed resentencing until 2004, when the Arizona Superior Court held separate proceedings to sentence Smith. *State v. Smith*, 159 P.3d 531, 536 (Ariz. 2007).

Like the current framework, Arizona's capital sentencing scheme in 2004 began with an "aggravation phase" in which the jury determined whether the prosecution had proved beyond a reasonable doubt any alleged statutory aggravating

circumstances. Ariz. Rev. Stat. § 13-703.01(C), (E) (2003).[1] If the jury found at least one of the aggravating circumstances, the proceeding moved to a "penalty phase" in which the jury heard mitigating evidence and determined whether to impose death. *See* Ariz. Rev. Stat. § 13-703.01(D), (F)–(G) (2003); *see also State v. McGill*, 140 P.3d 930, 946 n.9 (Ariz. 2006) (Hurwitz, J., concurring in part and dissenting in part) (describing Arizona's capital sentencing procedure). Although the Superior Court applied the then-current capital sentencing framework—including broad mitigation evidence and jury factfinding—the state sought to prove the statutory aggravators codified in the 1977 scheme. *Smith*, 159 P.3d at 536. In two separate proceedings, first for

---

[1] When Smith was first sentenced, Arizona's capital sentencing scheme was codified in Arizona Revised Statutes section 13-454 (Supp. 1973). In 2004, the procedure for imposing a death sentence was set forth in Arizona Revised Statutes section 13-703.01 (2003). The current procedure is codified at Arizona Revised Statutes section 13-752 (2012). Two changes between the 1977 and 2004 iterations, both referenced above, are noteworthy. First, unlike the scheme in place when Smith was indicted, the framework in place when Smith was resentenced in 2004 allowed a defendant to present any relevant mitigation evidence. *Compare* Ariz. Rev. Stat. § 13-454(D), (F) (Supp. 1973), *with* Ariz. Rev. Stat. § 13-701.01(G) (2003). Second, whereas the 1977 statute committed factfinding to a judge, the 2004 statute committed it to a jury. *Compare* Ariz. Rev. Stat. § 13-454(C)–(D) (Supp. 1973), *with* Ariz. Rev. Stat. § 13-703.01(S) (2003).

In Arizona and elsewhere, a capital sentencing proceeding consists of an "aggravation phase," which is sometimes referred to as the "eligibility phase," and a "penalty phase," which is sometimes referred to as the "selection phase." *See State v. McGill*, 140 P.3d 930, 946 n.9 (Ariz. 2006) (Hurwitz, J., concurring in part and dissenting in part). We use "aggravation phase" to refer to the first phase of a capital sentencing proceeding and "penalty phase" to refer to the second.

Spencer and second for Lee, the juries unanimously found three aggravating factors.

First, the juries found that Smith had been convicted of another offense exposing him to a life sentence or the death penalty, Arizona Revised Statutes section 13-454(E)(1) (1977).[2] To establish the (E)(1) aggravator, the prosecution introduced Smith's prior 1973 and 1976 convictions for raping Archibeque and Fortner.

Second, both juries found that Smith had been previously convicted of a felony involving "the use or threat of violence," Ariz. Rev. Stat. § 13-454(E)(2) (1977). To establish the (E)(2) aggravator, the prosecution first offered the Lee murder at the Spencer sentencing and then offered the Spencer murder at the Lee sentencing.

Third, the juries found that the Spencer and Lee murders were especially cruel, heinous, or depraved within the meaning of Arizona Revised Statutes section 13-454(E)(6) (1977). To establish the (E)(6) aggravator, the prosecution elicited testimony regarding the women's injuries and the cause of death for each. The prosecution offered evidence that both women had been asphyxiated by dirt forced into

---

[2] In 1977, these three aggravating factors were codified in Arizona Revised Statutes section 13-454(E). By 2004, the aggravators appeared at Arizona Revised Statutes section 13-703(F). Currently, the aggravators are set forth in Arizona Revised Statutes section 13-751(F). The (E)(1) and (E)(6) aggravators were the same in each version. Between 1977 and 2004, the (E)(2) factor was changed from prior felonies involving the threat of violence to prior felonies for a "serious offense." Ariz. Rev. Stat. § 13-703(F)(2). For ease of reference and continuity with the relevant Arizona Supreme Court decision and the district court order, we refer to the aggravating factors simply as (E)(1), (E)(2), and (E)(6).

their airways, that before death both had been bound at the wrists and ankles with ligatures, and that each suffered puncture and stab wounds. As the Arizona Supreme Court recounted, Spencer "suffered nineteen stab wounds to the pubic region and a vaginal tear that was caused by penetration. She also had three stab wounds to her breasts and a sewing needle was found embedded in her left breast." Lee "also had puncture and stab wounds to her chest, abdomen, and breasts and damage to her vulva."

As mitigation evidence, Smith offered expert testimony demonstrating mental impairment and psychological problems, including signs of dissociative identity disorder.[3] Smith's expert also concurred with the prosecution expert's diagnosis that Smith suffered from sexual sadism. Smith's mother and sister testified to Smith's personal history and several prison employees and a prison expert testified to his good behavior in prison.

Both juries returned a death verdict and the court entered a sentence of death by lethal injection.

On his third direct appeal, Smith raised six primary arguments. Among those arguments, and relevant to this federal habeas proceeding, Smith challenged the sufficiency of the evidence supporting the (E)(2) aggravator, the prosecution's use of autopsy-related hearsay evidence at the Lee sentencing in violation of the Confrontation Clause, U.S. Const., amend. VI, § 2, and the prosecution's use of prejudicial rebuttal evidence. Smith also asserted twelve one-paragraph claims which he conceded were foreclosed by state

---

[3] The parties agree that for the purposes of this appeal, the Spencer and Lee mitigation evidence was the same.

law.   Among those truncated claims, Smith asserted that
Arizona's capital sentence scheme provides no objective
standards to guide the jury in the penalty phase and thus
violates the Eighth and Fourteenth Amendments.   The
Arizona Supreme Court rejected each of Smith's challenges
and affirmed both death sentences. *Smith*, 159 P.3d 531. The
U.S. Supreme Court denied Smith's petition for certiorari.
*Smith v. Arizona*, 552 U.S. 985 (2007); 128 S. Ct. 2997
(mem.).

Two years later, in November 2009, the Arizona Supreme
Court appointed counsel for Smith's post-conviction
proceedings.   In mid-2011, Smith filed his post-conviction
relief petition in state superior court, referred to in Arizona as
a Rule 32 petition. *See* Ariz. R. Crim. P. 32.1.[4]  The post-
conviction court rejected each of Smith's arguments and
dismissed his Rule 32 petition.   In February 2012, the
Arizona Supreme Court denied review without comment.

---

[4] Smith raised three issues in his Rule 32 petition.   First, the
prosecution's use of autopsy-related hearsay testimony at both sentencing
proceedings violated Smith's Sixth Amendment confrontation rights in
light of *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009). Second,
the prosecution erroneously and prejudicially suggested that Smith bore
the burden to prove that he should not receive the death penalty.  Third,
newly discovered evidence of Smith's organic brain damage would have
affected the jury's determination of his sentence.   Smith's appellate
counsel failed to raise the Confrontation Clause claim in the Spencer case
and failed to raise the burden of proof issue in either case.  Smith argued
that counsel's omissions were the result of ineffective assistance of
counsel in violation of the Sixth Amendment.

## C.

In December 2012, Smith timely filed a new § 2254 habeas petition in federal court, in which he raised thirty-nine claims challenging his death sentences and requested an evidentiary hearing. Among those claims, Smith raised the following seven arguments which he has pressed on appeal:

Claim 13—The admission of autopsy-related hearsay evidence violated his Sixth Amendment right of confrontation;

Claim 15—The use of Smith's conviction for murdering Spencer to satisfy the (E)(2) aggravator in the Lee sentencing, and vice versa, violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

Claims 18, 19, and 20—The sentencing judge denied Smith his Sixth and Fourteenth Amendment rights to representation and due process when he responded to a jury question in the Spencer case in the absence of Smith's counsel, and counsel's failure to be available during jury deliberations and to raise that failure on appeal constituted ineffective assistance of counsel;

Claim 23—The prosecution presented irrelevant and unfairly prejudicial rebuttal evidence in violation of Smith's Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment and to due process;

Claim 29—Executing Smith after thirty-five years on death row would be cruel and unusual punishment in violation of the Eighth Amendment;

Claim 30—Arizona's (E)(6) aggravator for especially heinous, cruel, or depraved murders fails to narrow the class of death-eligible offenders as required by the Eighth and Fourteenth Amendments; and

Claim 39—Smith's counsel at sentencing rendered ineffective assistance in derogation of the Sixth Amendment by failing to develop and present mitigating evidence.

The district court denied the petition and request for an evidentiary hearing and it subsequently denied Smith's motion to alter or amend the judgment. The district court concluded that Smith's claims alleging Sixth Amendment confrontation and Fourteenth Amendment due process violations arising from admission of autopsy-related hearsay evidence and prejudicial rebuttal evidence—Claims 13 and 23—were "adequate to deserve encouragement to proceed further" or "debatable by reasonable jurists," and issued a certificate of appealability ("COA"). *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The district court declined to extend the COA to any of Smith's other claims.

Smith timely appealed. In his opening brief, Smith addressed the two certified claims and the seven other uncertified claims described above. We ordered the Attorney General to respond to Smith's uncertified claims, and we deferred ruling on whether to grant a COA on those issues. *See* 9th Cir. Rule 22-1(e). We construe Smith's opening brief as a motion to expand the COA pursuant to Circuit Rule 22-1(e), and we grant a COA on three of his uncertified claims—his challenges to Arizona's (E)(2) and (E)(6)

aggravators, Claims 15 and 30, and his claim of ineffective assistance of counsel, Claim 39.[5]

## II.

We review de novo the district court's denial of Smith's petition for a writ of habeas corpus and review its factual findings for clear error. *Hurles v. Ryan*, 752 F.3d 768, 777 (9th Cir. 2014). Because Smith filed his federal habeas petition after 1996, AEDPA governs. *Id.* We may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Only Supreme Court holdings clearly establish federal law for the purposes of § 2254(d)(1), but circuit precedent is persuasive authority in assessing what law is "clearly established" and whether the state court applied the law reasonably. *Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014).

A state court unreasonably applies federal law when it "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, —U.S.—, 134 S. Ct. 1697, 1706 (2014).

---

[5] We decline to expand the COA to encompass Smith's claims regarding jury deliberations and his claim that execution after a thirty-five-year delay constitutes cruel and unusual punishment, which are identified as Claims 18, 19, 20, and 29. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

"It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." *Andrade*, 538 U.S. at 75 (internal quotation marks omitted). Rather, the state court's application of Supreme Court holdings "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *Woodall*, —U.S.—, 134 S. Ct. at 1702 (quoting *Andrade*, 538 U.S. at 75–76). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III.

## A.

Smith contends in Claim 13 that the state trial court's admission of testimonial hearsay during the aggravation phase of the resentencing proceeding in the Lee case violated his Sixth Amendment right to confront witnesses. Smith argues that the sentencing court impermissibly admitted the out-of-court statements of the medical examiner who conducted Lee's autopsy through the testimony of the then-current chief medical examiner and a detective who was present at the autopsy. Smith asserts that the Arizona Supreme Court's ruling that this testimony did not violate the Confrontation Clause unreasonably applied clearly established federal law and unreasonably determined the facts in light of the record, and that the district court erred in concluding to the contrary.

The U.S. Supreme Court has never established a right to confront witnesses at sentencing. To the contrary, Smith's argument is foreclosed by *Williams v. New York*, 337 U.S. 241 (1949), "which held that the Confrontation Clause does not bar courts from considering unconfronted statements during sentencing proceedings." *Sivak v. Hardison*, 658 F.3d 898, 927 (9th Cir. 2011) (rejecting a Confrontation Clause challenge to the use of hearsay in a capital sentencing proceeding under pre-AEDPA standards); *see also United States v. Littlesun*, 444 F.3d 1196, 1197 (9th Cir. 2006); *United States v. Petty*, 982 F.2d 1365 (9th Cir.), *amended by* 992 F.2d 1015 (9th Cir. 1993). We therefore conclude that the Arizona Supreme Court did not act unreasonably in rejecting Smith's Sixth Amendment confrontation claim.[6]

**B.**

In Claim 23, Smith argues that the district court erred in finding that Smith suffered no constitutional violation when the prosecution introduced substantial evidence of Smith's prior crimes during both the Lee and Spencer penalty-phase hearings. Smith contends that the admission of that evidence

---

[6] Smith also asserts that the Arizona Supreme Court's confrontation analysis "resulted in a decision that was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). This argument need not detain us, however, because even if we found § 2254(d)(2) satisfied, *Williams*, 337 U.S. 241, and *Sivak*, 658 F.3d at 927, foreclose Smith's Confrontation Clause challenge. *Cf. Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[W]e may not grant habeas relief simply because of § 2254(d)(1) error and . . . if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised."); *see also Taylor v. Maddox*, 366 F.3d 992, 1008–16 (9th Cir. 2004) (holding that state courts made unreasonable factual determination and then proceeding to evaluate constitutional claim).

was unconstitutional under the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment, and the Ex Post Facto Clause, U.S. Const., art. 1, § 9, cl. 3.

**1.**

During both penalty phases of the Spencer and Lee resentencing proceedings, Smith offered mitigation evidence related to his mental health, his family background and relationships, and his good behavior in prison. Particularly relevant to this habeas claim, Smith's mental health expert, Dr. Parrish, agreed with the prosecution's mental health expert, Dr. Moran, that Smith suffered from "sexual sadism." During the Lee proceeding, Dr. Parrish explained the meaning of sexual sadism to the jury.[7] When questioned by defense counsel, Dr. Parrish identified Smith as a sexual sadist and agreed that sexual sadism could have caused Smith to lose control during the commission of his crimes. Dr. Parrish's testimony at the Spencer proceedings was very similar. Smith's counsel previewed the sexual sadism diagnosis in his opening statement during the Spencer penalty phase, although the focus was on Smith's asthma and anxiety diagnoses.

During rebuttal at both the Lee and Spencer proceedings, the prosecution called a number of witnesses to testify about the facts of Smith's two prior convictions and the facts of the

---

[7] Dr. Parrish explained that the "essential features of a paraphilia," the type of mental disorder encompassing sexual sadism, are "recurrent, intense, sexually arousing fantasies, sexual urges or behaviors, generally involving nonhuman objects: No. 1, nonhuman objects. No. 2, the suffering or humiliation of one's self or one's partner. No. 3, children or other nonconsenting persons that occur over a period of at least six months."

Lee and Spencer murders. The quantity and intensity of evidence was extensive and powerful.

During the Spencer penalty phase, the prosecution questioned at length five witnesses about the details of Smith's crimes. Dr. Moran described how the escalation of violence in Smith's crimes—from the Archibeque rape to the two murders—was typical for individuals with sexual sadism diagnoses. Dr. Moran related how, while raping Archibeque, Smith "us[ed] handcuffs," "state[d] it would be necessary to kill the victim," "related numerous things to the victim about bodies being found in the desert," and more. Dr. Moran opined that Smith's acts became more "degrading" during the later Fortner rape, when Smith "obtained a Pepsi bottle from somewhere within the car, placed it in her vagina, forced her to commit an act of fellatio, [and] also committed sodomy upon her." Finally, Dr. Moran explained that the "amount of violence was increasing" during the Lee and Spencer murders, as evidenced by "sewing needles that were embedded in [Spencer's] breast," the "cutting of [Lee's] vagina," and the murder victims' death by strangulation—"by forcing dirt down their throat [and] covering their mouth with duct tape." Dr. Moran then repeated the facts of the four crimes a second time in response to further questioning by the prosecution.

The prosecution also called two law enforcement officers. First, the prosecution called Detective Charles Adams, who had investigated the Archibeque case. At the prosecution's prompting, Adams "basically summarize[d his] report" for the jury. Adams explained how Smith offered Archibeque a ride, took her to his home, and raped her in the presence of his wife using handcuffs. Smith then drove both women to the desert, saying it "would be necessary to kill

[Archibeque],” raped her again outside the car while his wife waited, and ultimately released Archibeque on the promise that she would bring him $200 the next day. The prosecution then called Detective Dominguez, who described the elaborate story Smith told to police to explain his involvement in the Lee and Spencer murders. Dominguez also described arriving at the scene where Lee’s body was found. Lee was “completely nude” with “visible trauma on the body,” including “ligature markings around the ankles and wrists” and “trauma into the chest area.” Dominguez also testified about attending Lee’s autopsy. He recounted the medical examiner pointing out “stab wounds to the vaginal area,” a “puncture wound of the right breast by the nipple area,” “five stab wounds to the chest area,” and that her “deep throat area, was full of dirt.”

The prosecution also elicited the facts of Smith’s prior crimes during its cross examination of James Aiken, a corrections expert. Aiken had testified on direct examination that a “toothbrush with [a] razor blade attached” found in Smith’s prison locker was likely a “defensive weapon.” Smith had called Aiken to testify generally about Smith’s good conduct in prison. Ignoring the scope of Aiken’s direct examination testimony, the prosecution related, one by one, the facts of the Archibeque, Fortner, Spencer, and Lee crimes, and after each description, asked whether Aiken still believed the toothbrush was a defensive weapon.

Dorothy Fortner, the victim in Smith’s second rape conviction, provided the most damaging evidence against Smith’s mitigation case. Fortner recounted how Smith convinced her to accept a ride by claiming he was friends with her boyfriend and then took her to an “unpaved portion of the desert.” Fortner, who was four or five months pregnant

at the time, described how she "asked him a hundred times to let [her] go." Instead, Smith ran a knife "up and down [her] torso" and asked her if she "would like to be killed fast or slow." Fortner testified that Smith raped her "repeatedly" inside and outside the car, at one point using "a Coke bottle or Pepsi bottle." Smith "tried to strangle" her and made her urinate in front of his car while he watched. Fortner ended her testimony by relating how Smith said "he was going to cut [her] open with his knife and take [her] infant out and lay her on the desert floor and let her die, and let [Fortner] die next to her on the desert floor, and that he was going to watch this."

The jury faced a similar wave of witnesses during the Lee penalty-phase proceedings. Dr. Moran described how Smith's crimes fit the description of sexual sadism and Detective Adams gave a similar description of the Archibeque crime. In place of Detective Dominguez's testimony about Lee's murder, Detective Jessie Locksa testified about the similarly gruesome details of Spencer's murder. Unlike the Spencer proceeding, however, Fortner did not testify.

### 2.

### a.

Smith first argues that the prosecution's introduction of "extensive, inflammatory evidence" violated his Fourteenth Amendment due process right to fundamental fairness because it was "tantamount to the prosecution offering nonstatutory aggravating circumstances." The Arizona Supreme Court rejected this argument on direct appeal. *Smith*, 159 P.3d at 543. The state supreme court concluded

that the prosecution's rebuttal evidence was "relevant to the diagnosis of sexual sadism," and that it did not "render[] his sentencing proceedings fundamentally unfair." *Id.* at 542–43. Smith did not raise this due process claim during his state post-conviction proceedings, but he renewed it in his federal habeas petition. The district court ruled that the Arizona Supreme Court's "decision was neither contrary to nor an unreasonable application of clearly established federal law."

**b.**

Under the state's death penalty scheme, the Arizona Supreme Court had little difficulty concluding that the prosecution's rebuttal evidence was relevant to Smith's mitigation case because the evidence "assisted the jury in its evaluation of" the expert testimony regarding Smith's mental health at the time of the murders. *Id.* at 542.[8] Arizona Revised Statutes section 13-703.01(G) provides that both the prosecution and the defense "may present any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency." Once Smith introduced evidence of his sexual sadism diagnosis in support of his mitigation case, the prosecution was entitled to present evidence related to that diagnosis.

As the Arizona Supreme Court noted, both parties' mental health experts "relied on the underlying facts of" Smith's prior crimes to make their diagnoses. *Id.* Thus, the

---

[8] Normally, "violations of state law are not cognizable on federal habeas review." *Rhoades v. Henry*, 611 F.3d 1133, 1142 (9th Cir. 2010). When the state law error rises to the level of a due process violation, however, federal habeas review is available. *Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

prosecution was entitled to present those underlying facts to the jury, so jurors could assess Smith's diagnosis and its mitigating impact, if any. Smith also argued that his sexual sadism was at least partially responsible for his inability to control his actions. Again, that assertion opened the door for the prosecution to rebut Smith's claim by offering the facts of Smith's crimes as evidence that he acted deliberately or purposefully. The state court's relevancy finding is a question of state law, which we must accept unless rebutted by clear and convincing evidence. *See* 28 U.S.C.A. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 330 (2003). Smith has failed to meet that high burden here.

Even if evidence is relevant, however, it may still violate the Due Process Clause if it is "so unduly prejudicial that it renders the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991); *see also Lisenba v. California*, 314 U.S. 219, 236 (1941) (holding that in "a criminal trial, denial of due process" occurs when the "absence of [fundamental] fairness fatally infected the trial"). Here, the Arizona Supreme Court's conclusion that the prosecution's rebuttal evidence did not render Smith's sentencings fundamentally unfair was not an "unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1).

In *Dawson v. Delaware*, the U.S. Supreme Court held that "just as the defendant has the right to introduce any sort of relevant mitigating evidence, the State is entitled to rebut that evidence with proof of its own." 503 U.S. 159, 167 (1992). The Court endorsed the "principle of broad rebuttal asserted by Delaware," although it ultimately rejected the State's rebuttal evidence on First Amendment grounds. *Id.* at 168. In light of the U.S. Supreme Court's instruction that both the defense and prosecution should be given wide latitude when

introducing evidence in the penalty phase, it was reasonable for the Arizona Supreme Court to conclude that the prosecution's rebuttal evidence, while powerful, did not render Smith's sentencing proceedings fundamentally unfair.

The fact that the trial court imposed some limits on the prosecution's rebuttal evidence bolsters the reasonableness of the Arizona Supreme Court's conclusion. In response to the defense's argument in both proceedings that allowing evidence about all of Smith's eleven other adjudicated and unadjudicated crimes would be overbroad, the trial court limited the scope of the prosecution's evidence to crimes for which Smith had been either charged or convicted.[9]

Further, to the extent that Smith's ultimate due process concern is that the jury considered the prosecution's rebuttal evidence as evidence of non-statutory aggravators, both the trial court and the prosecution were careful to clarify that the rebuttal evidence could *not* be used for that purpose. The judge instructed the jury as follows:

> Pursuant to law, the State has presented evidence to rebut the defendant's mitigation evidence. This evidence is not a new aggravating circumstance. It is presented solely to give you a more complete picture of the defendant's character, propensities or record, and to aid you in properly weighing whether the mitigation is sufficiently

---

[9] Smith states that the trial court's limiting order only applied to the Lee proceeding. Nonetheless, it appears that during the Spencer proceeding, the prosecution also limited the rebuttal evidence to those crimes for which Smith had been charged or convicted.

substantial to call for leniency and the imposition of a life sentence.

The prosecution made similar remarks to the jury in both cases. The trial court's emphasis on the limited, permissible role of the rebuttal evidence weighs against a finding that the sentencing hearings were rendered fundamentally unfair. *See Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) (holding that a limiting instruction by the trial court precluded a finding that improperly admitted evidence "so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process").

There is little doubt that the prosecution's powerful rebuttal evidence was prejudicial to Smith. Witness after witness testified in detail about the psychological and physical violence that Smith inflicted on his victims, painting a picture of exceptional violence. Nonetheless, in light of Smith's reliance, minimal as it may have been, on his sexual sadism diagnosis and the U.S. Supreme Court's pronouncement that the prosecution enjoys wide latitude in admitting rebuttal evidence, it was reasonable for the Arizona Supreme Court to conclude that the evidence fell within the boundaries of due process.

**3.**

**a.**

Smith also contends that the introduction of the prosecution's rebuttal evidence violated the Eighth Amendment. The Arizona Supreme Court summarily rejected that claim, citing its decision in *State v. Hampton*, 140 P.3d 950 (2006). *Smith*, 159 P.3d at 542 n.11. Although

*Hampton* is a state court decision, it cites U.S. Supreme Court precedent for the proposition that the "Eighth Amendment does not . . . limit the State to urging statutory aggravating factors at the penalty stage." *Hampton*, 140 P.3d at 961 n.10. Smith did not assert this claim during his state post-conviction proceedings, but he renewed it in his federal habeas petition. The district court did not conduct a separate analysis of Smith's Eighth Amendment claim. Referring to Smith's due process and Eighth Amendment claims together, the district court ruled that the Arizona Supreme Court's "decision was neither contrary to nor an unreasonable application of clearly established federal law."

**b.**

The district court correctly rejected Smith's Eighth Amendment claim. The U.S. Supreme Court has held that "statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty." *Zant v. Stephens*, 462 U.S. 862, 878 (1983). The Court proceeded to conclude, however, that "the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death." *Id.* That same year, relying on *Zant*, the U.S. Supreme Court held that "nothing in the Eighth Amendment . . . prohibits the admission of [the defendant's] criminal record" even where the trial judge's consideration of the "criminal record as an aggravating circumstance was improper as a matter of state law." *Barclay v. Florida*, 463 U.S. 939, 956 (1983).

*Barclay* and *Zant* support the Arizona Supreme Court's decision to reject Smith's Eighth Amendment claim. In this

case, the prosecution introduced evidence to rebut Smith's contention that his mental health, including his sexual sadism diagnosis, constituted a mitigating circumstance. Although the evidence of Smith's prior crimes would have been improper non-statutory aggravating evidence during the aggravation phase of the sentencing proceedings, under *Barclay*, the Eighth Amendment did not prohibit its introduction during the penalty phase. Therefore, the Arizona Supreme Court's determination was not an unreasonable application of clearly established federal law.

**4.**

**a.**

Finally, Smith claims that admission of the prosecution's rebuttal evidence violated his rights under the Ex Post Facto Clause. Smith argues that the Arizona sentencing law in place at the time he committed the Lee and Spencer murders limited evidence during the penalty phase to "1) evidence that is mitigating, and 2) evidence that rebuts mitigation." He contends that the trial court violated the Ex Post Facto Clause by applying the capital sentencing statute in place in 2004, Ariz. Rev. State. § 13-703.01, when Smith was resentenced, and interpreting it to allow the introduction of a greater range of evidence. In a minute order rejecting Smith's Ex Post Facto argument, the trial court determined that "it always has been and remains the law that both the defendant and state may present all relevant evidence, whether directly or on rebuttal, to aid the jury in determining whether there is mitigation sufficiently substantial to call for leniency."

Smith did not raise an Ex Post Facto Clause claim on direct appeal or in his state post-conviction relief petition. In

fact, the district court is the only post-conviction court to address this claim. In rejecting that claim, the district court concluded that any change to Arizona's sentencing scheme was procedural rather than substantive, and therefore did not implicate the Ex Post Facto Clause. Smith's ex post facto claim is procedurally defaulted, but because the State waived this affirmative defense, we address it on the merits. *See McDaniels v. Kirkland*, 813 F.3d 770, 775 n.3 (9th Cir. 2015) (reaching merits of claim where state waived the defense of procedural default).

**b.**

As an initial matter, it is questionable whether Arizona's 2003 sentencing statute represented a change in the law when compared to the 1970's sentencing statute. Arizona Revised Statutes section 13-454(B) (1977), which was in effect when Smith committed the Lee and Spencer murders, provided that during sentencing, "[t]he prosecution and the defendant shall be permitted to rebut any information received at the [sentencing] hearing." The sentencing statute in effect in 2004 stated:

> At the penalty phase, the defendant and the state may present any evidence that is relevant to the determination of whether there is mitigation that is sufficiently substantial to call for leniency. In order for the trier of fact to make this determination, the state may present any evidence that demonstrates that the defendant should not be shown leniency.

Ariz. Rev. Stat. § 13-703.01 (2003). Both versions of Arizona's statute use broad language to describe admissible

rebuttal evidence: one permits "any information" and the other "any evidence." While one *could* interpret the later statute to permit the introduction of a wider scope of rebuttal evidence, it is also fair to read it as largely restating the same objectives of the earlier statute. Thus, the state trial court reasonably concluded that the "new death penalty sentencing scheme merely clarifies and does not change the standard for admitting rebuttal evidence," and the district court agreed with that conclusion.

Even if Smith is correct that the later version of the statute broadens the range of admissible rebuttal evidence, the trial and district courts concluded that any change to that law was "procedural." Legal changes must be substantive, rather than procedural, to give rise to an Ex Post Facto Clause violation. *Dobbert v. Florida*, 432 U.S. 282, 293 (1977).

U.S. Supreme Court precedent forecloses Smith's argument that any alleged change in the 2003 statute was substantive. In *Carmell v. Texas*, the Supreme Court distinguished between rule changes affecting the "admissibility of evidence" and rules affecting "whether the properly admitted evidence is sufficient to convict the defendant." 529 U.S. 513, 546 (2000). In *Carmell*, the defendant challenged a statutory change that eliminated the requirement of corroborating evidence in certain rape cases, allowing a conviction to be obtained on the basis of the victim's testimony alone. *Id.* at 544–45. That change in law violated the Ex Post Facto Clause because it did "not merely regulate the mode in which the facts constituting guilt may be placed before the jury, . . . but govern[ed] the sufficiency of those facts for meeting the burden of proof." *Id.* at 545 (internal alterations and quotation marks omitted). The Supreme Court contrasted the change regarding corroboration

evidence with changes related to rules governing witness competency or "what kind of evidence may be introduced at trial." *Id.* at 545, 550.

As the district court properly concluded, in the context of Smith's case, any change to Arizona's capital sentencing statute falls squarely in the "admissibility of evidence" category and constitutes a procedural change in law. Whether the prosecution may present more or different rebuttal evidence under the statute in place in 2004 does not change the fact that Smith had already been found death-eligible. Smith challenges only the evidence ruled admissible by the trial court in the penalty phases of the Spencer and Lee sentencing proceedings, not evidence admitted at the aggravation phases nor at the guilt phase of his trial in the Lee case. Given this procedural context, Smith cannot argue that the changes to the capital sentencing statute's text resulted in a substantive change triggering Ex Post Facto Clause concerns because the rebuttal evidence was not used to "convict" him. *Carmell*, 529 U.S. at 546. *Carmell* instructs that "[t]he issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant." *Id.*[10] Thus,

---

[10] Although it does not qualify as clearly established law for AEDPA purposes, the Arizona Supreme Court addressed a very similar Ex Post Facto Clause challenge to the 2003 Arizona death sentencing scheme as a whole and reached the same conclusion as the district court and superior court here. In *State v. Ring*, the Arizona Supreme Court held generally that the "framework of a state's statutory capital sentencing scheme is procedural in nature" and specifically held that the changes the Arizona legislature made to the "capital sentencing procedures do not resemble the type of after-the-fact legislative evil contemplated by contemporary understandings of the ex post facto doctrine." 65 P.3d 915, 928 (Ariz. 2003).

the state trial court's rejection of Smith's Ex Post Facto argument was not contrary to nor an unreasonable application of *Carmell*.  28 U.S.C.A. § 2254(d)(1).

In sum, none of Smith's three arguments related to the prosecution's rebuttal evidence warrant habeas relief.

## C.

Smith next contends (in Claim 15) that the application of the (E)(2) aggravator to his case violated the Eighth and Fourteenth Amendments, because it is impermissibly vague as interpreted by the Arizona Supreme Court.[11]  Under the state criminal code in effect at the time of the 2004 resentencing proceedings, the (E)(2) aggravator applied when the "defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person."[12]  The prosecution used the Lee murder as an aggravating factor during the Spencer sentencing and vice versa.

---

[11] The state is mistaken when it suggests that Smith "abandoned" his vagueness challenge by failing to raise it in his habeas petition.  Smith alleged in Claim 15 that the application of (E)(2) to his case violated, among other things, the Eighth and Fourteenth Amendments.  He also argued in the district court that the Arizona Supreme Court's definition of murder as necessarily involving violence "failed to appropriately narrow the aggravating circumstance."  Smith did not abandon this claim.

[12] The Arizona Legislature subsequently amended Arizona Revised Statutes section 13-703(F)(2) (formerly Ariz. Rev. Stat. § 13-454(E)(2)), to require that a prior conviction be for a "serious offense."  First-degree murder is expressly identified as such an offense.  *See* Ariz. Rev. Stat. § 13-703(I)(1).

**1.**

On direct appeal, Smith argued that the trial court erred in denying a judgment of acquittal with respect to the (E)(2) aggravator because Arizona's first-degree murder statute, Ariz. Rev. Stat. § 13-452 (Supp. 1957–1978) does not necessarily require the use or threat of force. The Arizona Supreme Court rejected that argument, and held that under the text of section 13-452,[13] first-degree murder could not be committed without the use of force. *Smith*, 159 P.3d at 537. The state supreme court separately held that Arizona had not violated Smith's Eighth and Fourteenth Amendment rights by failing to "sufficiently narrow" the application of (E)(2). *Id.* at 546. Smith did not challenge the (E)(2) aggravator in state post-conviction proceedings, but he renewed that claim in his federal habeas petition. The district court denied the claim, finding that the Arizona Supreme Court's interpretation of Arizona's murder statute was not arbitrary and capricious. Before this court, Smith argues that "by failing to sufficiently narrow the (E)(2) aggravating circumstance, the [Arizona] supreme court rendered it unconstitutionally vague" and that in doing so it unreasonably applied clearly established Supreme Court law.

**2.**

The U.S. Supreme Court has long held that states must carefully define their death aggravators to avoid violating the Eighth and Fourteenth Amendments; undefined aggravators are subject to vagueness challenges. *Lewis v. Jeffers*,

---

[13] Section 13-452 defined first-degree murder as "murder . . . perpetrated by means of poison or lying in wait, torture or by any other kind of wilful, deliberate or premeditated killing." *See Smith*, 159 P.3d at 537.

497 U.S. 764, 774 (1990); *Godfrey v. Georgia*, 446 U.S. 420, 427–28 (1980).  Those challenges "characteristically assert that the . . . challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in *Furman v. Georgia*."  *Maynard v. Cartwright*, 486 U.S. 356, 361–62 (1988).  Thus, a "narrowing construction" is required to "channel the sentencer's discretion by clear and objective standards."  *Jeffers*, 497 U.S. at 774 (quotation marks omitted).  Without narrowly defined aggravators, the sentencer cannot make "a principled distinction between those who deserve the death penalty and those who do not." *Id.* at 776.

The Arizona Supreme Court has provided a narrowing construction for the (E)(2) aggravator.  It has instructed, "[i]n order to constitute an aggravating circumstance under [(E)(2)], the prior conviction must be for a felony which *by its statutory definition* involves violence or the threat of violence on another person."  *State v. Gillies*, 662 P.2d 1007, 1018 (Ariz. 1983) (emphasis added); *see also State v. Fierro*, 804 P.2d 72, 82 (Ariz. 1990).  In other words, the specific facts of the defendant's crime are irrelevant for triggering the (E)(2) aggravator.  *Gillies*, 662 P.2d at 1018.  In *Gilles*, the Arizona Supreme Court explained that its construction of the (E)(2) aggravator "guarantees due process to a criminal defendant."  *Id*.  It remarked that "[e]vidence of a prior conviction is reliable, the defendant having had his trial and exercised his full panoply of rights which accompany his conviction."  *Id.*  Thus, focusing on the definition of the crime of conviction and the conviction itself prevents "a second trial on [the] defendant's prior conviction to establish" the (E)(2) aggravating circumstance.  *Id.*

In addition to focusing on "the statutory definition of the prior crime, and not its specific factual basis," the Arizona Supreme Court has further narrowed the (E)(2) aggravator by defining "violence" as the "exertion of any physical force so as to injure or abuse." *State v. Henry*, 863 P.2d 861, 879 (Ariz. 1993) (quoting *State v. Arnett*, 579 P.2d 542, 555 (Ariz. 1978)). The state supreme court additionally explained that the physical force exerted must be "employed or threatened with the intent to injure or abuse" for the (E)(2) aggravator to apply. *Fierro*, 804 P.2d at 82.

Through this case law, Arizona has offered a narrowed construction of the (E)(2) aggravator. The U.S. Supreme Court, however, has yet to analyze any "prior crime of violence" aggravator. This means there is no clearly established federal law explaining how a state must narrow an aggravator like (E)(2) in order to sufficiently "channel the sentencer's discretion by clear and objective standards." *Jeffers*, 497 U.S. at 774. Without any guidance from the Supreme Court, we cannot say that Arizona's construction of (E)(2) is unreasonable.

Even when a state properly adopts a narrowing construction of an aggravator, a defendant may still have a colorable vagueness claim if the state court fails to actually apply the narrowing construction. For example, in *Godfrey v. Georgia*, the Supreme Court held that, although the Georgia high court had properly created three factors to consider when applying its "(b)(7)" aggravator,[14] the state

---

[14] Georgia's (b)(7) aggravator applied when an offense was "outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." Ga. Code § 27-2534.1(b)(7) (1978).

supreme court had failed to assess those factors in Godfrey's case. 446 U.S. at 431–32. Thus, it is not enough to adopt a narrowing construction; a state court also must use that narrowed definition, or it risks violating the Eighth and Fourteenth Amendments.

Here, any (E)(2) vagueness challenge fails because both the trial court and Arizona Supreme Court applied the narrowed definition of the (E)(2) aggravator to Smith's case. After the close of evidence during the aggravation phase in the Spencer proceeding but before the jury commenced deliberations, the trial court rejected Smith's motion for acquittal on the (E)(2) aggravator, noting that by providing the jury with the definition of first-degree murder and the guilty verdict in the Lee case, the court had "sufficiently narrow[ed]" the jury's discretion.[15] It is clear that the trial court properly instructed the jury using the narrowed definition of the (E)(2) aggravator. Similarly, the Arizona Supreme Court held that a "prior felony conviction qualifie[s] as an aggravator under [(E)(2)] only if the elements of the offense—without regard to the underlying facts of the

---

[15] The trial court instructed the jury as follows:

> First, you must decide whether the defendant has been convicted of the first-degree murder of Neva Lee. Second, you must decide whether that first-degree murder conviction was a felony that necessarily involved the use or threat of violence on another person.

The jury returned a verdict of "proven." The trial court gave a similar instruction in the Lee sentencing proceeding, except that "Neva Lee" was changed to "Sandy Spencer" and a sentencing order was provided to the jury to show Smith's conviction for killing Spencer, rather than a guilty verdict.

crime—required the use or threat of violence on another person." *Smith*, 159 P.3d at 537. In evaluating Smith's case, the Arizona Supreme Court described the (E)(2) inquiry as "whether first-degree murder necessarily require[s] the use or threat of violence." *Id.* That the Arizona courts recognized and applied the narrowed definition of (E)(2) forecloses Smith's constitutional vagueness claim.

Nor did Arizona Supreme Court act contrary to clearly established federal law in its application of the narrowed (E)(2) aggravator to the facts of Smith's case. *See Jeffers*, 497 U.S. at 780 (explaining that even if a court utilizes a constitutionally narrowed aggravator, it may still violate the Eighth and Fourteenth Amendments if it "misapplie[s] its own aggravating circumstance to the facts of [the] case"). At the close of the aggravation phase in both cases, the jury was instructed on Arizona's statutory definition of first-degree murder and provided with a copy of the Lee and Spencer indictments, the Lee guilty verdict (for the Spencer jury), and the Spencer sentencing order (for the Lee jury). The judge instructed the jury in each case to ignore the "specific facts" of Smith's offenses and examine only the statute and verdicts. Using those sources, the jury considered whether Smith had been convicted of a crime that necessarily involved violence and concluded that he had. On direct review, the Arizona Supreme Court agreed that first-degree murder is a crime that necessarily involves violence, concluding that the jury's determination was correct as a matter of law. *Smith*, 159 P.3d at 537.

The standard under which a habeas court reviews an as-applied challenge is very deferential. In *Jeffers*, the U.S. Supreme Court held that "federal habeas review of a state court's application of a constitutionally narrowed aggravating

circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." 497 U.S. at 780. The Supreme Court further held that the appropriate standard of review for a vagueness inquiry is the "rational factfinder" standard, which asks whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact" could have found the aggravating circumstance. *Id.* at 781.

The Arizona Supreme Court's determination that applying the (E)(2) aggravator to Smith's case was not arbitrary or capricious was not an unreasonable application of *Jeffers*. Citing a case from the U.S. Court of Appeals for the Second Circuit, the Arizona Supreme Court held that "even surreptitious poisoning involves the use of force" because a defendant "who uses poison to kill another person 'intentionally avails herself of the physical force exerted by poison on a human body.'" *Smith*, 159 P.3d at 537 (quoting *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 174–75 (2d. Cir. 2006)). In a footnote, the state supreme court also remarked that it previously upheld the use of first-degree murder as an (E)(2) aggravator in a capital case. *Id.* at 537 n.5; *see State v. Gretzler*, 659 P.2d 1, 16 (Ariz. 1983) (holding that the "trial court correctly found" the (E)(2) aggravator "based on the defendant's nine prior convictions for first degree murder"). In light of the state supreme court's reliance on this precedent, its decision cannot be described as arbitrary and capricious.

Nor does the Arizona Supreme Court's decision to allow any first-degree murder to serve as an (E)(2) aggravator lead to "standardless sentencing discretion" in contravention of clearly established Supreme Court law as Smith claims. It is

true that the U.S. Supreme Court has required constitutionally narrowed aggravators so that "capital punishment [cannot] be imposed in any murder case." *Godfrey*, 446 U.S. at 422–23. For example, in *Godfrey* a plurality of the Court rejected Georgia's "wantonly vile" aggravator, because a "person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.'" *Id.* at 428–29. But (E)(2) is different because, unlike the aggravator in *Godfrey*, it looks not to the crime for which the defendant is being sentenced but to his past offenses. There is nothing to suggest that the Supreme Court's warning not to make every murder eligible for the death penalty would extend to every murderer who has *already* committed murder in the past.

Because the application of the (E)(2) aggravator was in no way contrary to or an unreasonable application of clearly established federal law, we affirm the district court's denial of Smith's challenge to the (E)(2) aggravator.

**D.**

In Claim 30, Smith similarly argues that the (E)(6) aggravator for offenses committed in an especially heinous, cruel, or depraved manner violates the Eighth Amendment, and that the Arizona Supreme Court's rejection of this argument was an unreasonable application of clearly established federal law.

**1.**

Prior to the resentencing proceedings, Smith moved to dismiss the (E)(6) aggravator as unconstitutionally vague. Smith argued that the (E)(6) aggravator "provides no

meaningful guidance for identifying the most blameworthy killings, and offers no protection from an arbitrary and capricious application of the death penalty." The trial court denied Smith's motion. The court briefly discussed the U.S. Supreme Court's decision in *Maynard v. Cartwright*, 486 U.S. 356 (1988), and cited to three U.S. Supreme Court decisions upholding Arizona's (E)(6) aggravator: *Walton v. Arizona*, 497 U.S. 639 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *Lewis v. Jeffers*, 497 U.S. 764 (1990); and *Richmond v. Lewis*, 506 U.S. 40 (1992). The trial court concluded that "by giving detailed and clear jury instructions concerning the definition and application of the ([E])(6) aggravating factors, the jury will be carefully focused and limited in its fact finding and deliberative duties as to each factor so as to prevent any arbitrary and capricious aggravation and sentencing findings and decisions from being made."

At the Spencer and Lee resentencings, the court instructed the juries on the (E)(6) aggravator, and both juries found that each of the three factors supporting the (E)(6) aggravator had been proven beyond a reasonable doubt.[16]

---

[16] At the Spencer resentencing, the trial judge instructed the jury as follows:

> Next aggravating circumstance alleged is the especially cruel, heinous or depraved.

> Concerning this aggravating circumstance, all first degree murders are to some extent heinous, cruel or depraved. However, this aggravating circumstance cannot be found to exist unless the murder is especially heinous, cruel or depraved, that is, where the circumstances of the murder raise it above the norm of other first degree murders.

The terms "cruel, heinous," or "depraved" are to be considered in the disjunctive; therefore, proof of any one of these factors is sufficient to establish this aggravating circumstance.

Cruelty involves the infliction of physical pain and/or mental anguish on the victim before death. A crime is committed in an especially cruel manner when a defendant either knew or should have known that the manner in which the crime was committed would cause the victim to experience physical pain and/or mental anguish before death. The victim must be conscious for at least some portion of the time when pain and/or anguish was inflicted.

Terms heinous or depraved, the term "heinous" and "depraved" focus on a defendant's state of mind at the time of the offense, as reflected by his words and acts.

A murder is especially heinous if it is hatefully or shockingly evil; grossly bad. A murder is especially depraved if it is marked by debasement, corruption, perversion or deterioration. In order to find heinousness or depravity, you must find that the defendant had such a mental state as exhibited by engaging in at least one of the following actions:

First, infliction of gratuitous violence on the victim;

Second, needless mutilation of the victim's body after death.

In this context, "gratuitous violence" refers to violence committed upon the victim beyond that necessary to kill. In this context, "needless mutilation" means that the defendant, in an act separate from the killing itself, committed other acts with the intent to mutilate the victim's corpse.

The Arizona Supreme Court has interpreted Arizona's capital sentencing statute to provide that proving of any of the three factors is sufficient to trigger the (E)(6) aggravator. *See State v. Cromwell*, 119 P.3d 448, 456 (Ariz. 2005) ("As in prior decisions, we note once again that the [(E)](6) aggravator is stated in the disjunctive, indicating that evidence of any one of the statutory prongs, 'heinous,' 'cruel,' or 'depraved' will support a finding that the (F)(6)

---

To assist you in determining whether or not murder is heinous or depraved, you may consider whether:

The murder was senseless; or

Second.  Helplessness of the victim.

All murders are senseless because of the brutality and finality.  Yet not all are senseless as the term is used to distinguish those first degree murders that warrant a death sentence from those that do not. Rather, than senseless murder is one that is unnecessary to achieve a defendant's criminal purpose.

"Helplessness" is proven when the victim is unable to resist.

Neither senselessness nor helplessness, standing alone, are sufficient to prove that this murder was heinous or depraved.

As previously stated, the terms especially cruel, heinous or depraved are considered separately; therefore, the presence of any one of these factors, or combination of factors, is sufficient to establish the aggravating circumstance.

The trial judge delivered a nearly identical instruction at Lee's resentencing.

aggravator is present."). On direct review, the Arizona Supreme Court independently determined that the prosecution proved the (E)(6) aggravator beyond a reasonable doubt, concluding that "overwhelming evidence established that the murders of Spencer and Lee were especially cruel." *Smith*, 159 P.3d at 544.[17]

The state supreme court agreed with the trial court's definition of cruelty in its jury instructions, explaining, "The 'cruelty' prong of the (E)(6) aggravator focuses on the victim's mental anguish and physical suffering. A finding of cruelty requires proof that the victim consciously experienced physical or mental pain prior to death, and the defendant knew or should have known that suffering would occur." *Id.* (quotation marks omitted). The Arizona Supreme Court noted that both victims were bound and had their mouths taped shut, which would have been unnecessary if they were unconscious. *Id.* That court also observed that both victims had their noses and mouths filled with dirt and died of asphyxiation. *Id.* Because such treatment would cause mental anguish and physical pain, and because "[a]t a minimum, Smith should have known pain and anguish would occur," the Arizona Supreme Court independently determined that the prosecution had proved cruelty. *Id.* at 544–45. And because proof of any of the three factors was sufficient, the state supreme court did not consider the juries' separate findings of heinousness and depravity. *Smith*, 159 P.3d at 546.

---

[17] At the time of the murders, state law required that the Arizona Supreme Court "independently review[] the aggravation and mitigation evidence to determine whether the death sentence was appropriate." *Smith*, 159 P.3d at 544 n. 15 (citing *State v. Richmond*, 560 P.2d 41, 51 (Ariz. 1976)).

Smith challenged the (E)(6) aggravator in the district court, arguing that it failed to narrow the class of death-eligible defendants. In light of the U.S. Supreme Court's opinions in *Walton*, 497 U.S. at 652–56, and *Jeffers*, 497 U.S. at 774–77, the district court denied habeas relief.

**2.**

**a.**

In *Walton*, the U.S. Supreme Court rejected a vagueness challenge to Arizona's (E)(6) aggravator. 497 U.S. at 652–57. Like Smith, Walton argued that the "especially heinous, cruel, or depraved aggravating circumstance as interpreted by the Arizona courts fails to channel the sentencer's discretion as required by the Eighth and Fourteenth Amendments." *Id.* at 652.

The Supreme Court acknowledged that the aggravator was facially vague as written. *Id.* at 654. Nonetheless, it rejected the challenge and upheld the (E)(6) aggravator, holding that the Arizona Supreme Court's narrowing construction satisfied constitutional requirements. *Id.* at 654. The U.S. Supreme Court distinguished its prior holdings in *Cartwright*, in which it reversed a death sentence based on Oklahoma's similar "especially heinous, atrocious, or cruel" aggravator, and in *Godfrey*, in which it reversed a death sentence based on Georgia's "outrageously or wanton or vile, horrible or inhuman" aggravator. Unlike *Walton*, in both *Cartwright* and *Godfrey* "the defendant[s] [were] sentenced by a jury and the jury either was instructed only in the bare terms of the relevant statute or in terms nearly as vague. Neither jury was given a constitutional limiting definition of

the challenged aggravating factor." *Walton*, 497 U.S. at 653 (citations omitted).

In *Walton*, by contrast, the Arizona Supreme Court explained that "'a crime is committed in an especially cruel manner when the perpetrator inflicts mental anguish or physical abuse before the victim's death,' and that [m]ental anguish includes a victim's uncertainty as to his ultimate fate." *Id.* at 654 (alteration in original) (quoting *State v. Walton*, 769 P.2d 1017, 1032 (Ariz. 1989). The U.S. Supreme Court held that Arizona's narrowing instruction gave "meaningful guidance to the sentencer" and therefore was constitutionally sufficient. *Id.* at 655. The Court also said it would not "fault the state court's statement that a crime is committed in an especially 'depraved' manner when the perpetrator 'relishes the murder, evidencing debasement or perversion,' or 'shows an indifference to the suffering of the victim and evidences a sense of pleasure' in the killing." *Id.* (quoting *Walton*, 769 P.2d at 1033).

In another opinion decided the same day, the Supreme Court also reversed our holding that Arizona's construction of the (E)(6) aggravator contravened *Cartwright* and *Godfrey*. *Jeffers*, 497 U.S. at 774. Again, the Court distinguished both cases. In *Jeffers*, the Arizona Supreme Court had applied a narrowing construction with respect to the terms "heinous" and "depraved," looking to the "infliction of gratuitous violence on the victim" and "the apparent relish with which the defendant commit[ted] the murder." *Id.* at 770. Those narrowing constructions sufficiently channeled the sentencer's discretion. *Id.* at 776–77. The Court repeated its prior holding, concluding that *Walton* "squarely foreclose[d] any argument that Arizona's subsection ([E])(6) aggravating circumstances, as construed by the Arizona Supreme Court,

fails to channel the sentencer's discretion by clear and objective standards that provide specific and detailed guidance, and that make rationally reviewable the process for imposing a sentence of death." *Id.* at 777–78 (internal quotation marks omitted).

Two years later, the U.S. Supreme Court took up another challenge involving Arizona's (E)(6) aggravator. *Richmond*, 506 U.S. at 46. The Arizona Supreme Court had not crafted the (E)(6) aggravator's narrowing construction before the defendant was sentenced, and thus the sentencing judge could not have relied on the aggravator without violating the defendant's constitutional rights. *Id.* at 47.[18] Nonetheless, as in *Walton* and *Jeffers*, the U.S. Supreme Court again approved of the narrowing construction adopted after the defendant had been sentenced, *id.* at 48, as set forth by the Arizona Supreme Court in *State v. Gretzler*, 659 P.2d at 10–11 (Ariz. 1983):

> [T]he statutory concepts of heinous and depraved involve a killer's vile state of mind at the time of the murder, as evidenced by the killer's actions. Our cases have suggested specific factors which lead to a finding of heinousness or depravity[:]
>
> . . . .
>
> [One such factor] is the infliction of gratuitous violence on the victim.

---

[18] The Court ultimately granted habeas relief because the Arizona Supreme Court's independent review had not cured the deficient instruction. *Richmond*, 506 U.S. at 51–52.

. . . .

[Another] is the needless mutilation of the
victim.

*Richmond*, 506 U.S. at 50–51.

**b.**

Comparing the (E)(6) instruction given in Smith's case
with the formulations approved by the U.S. Supreme Court in
*Walton*, *Jeffers*, and *Richmond* demonstrates that the Arizona
Supreme Court's decision rejecting Smith's claim was not an
unreasonable application of clearly established federal law.
Smith's sentencing juries received instructions on cruelty
similar to those approved in *Walton*, requiring a finding that
the defendant knew or should have known that his actions
would cause physical pain or mental anguish before death and
that the victim was conscious to experience that pain or
anguish. *See Walton*, 497 U.S. at 654.

Similarly, Smith's sentencing juries were instructed that
heinousness required a "hatefully or shockingly evil" murder,
that depravity was "marked by debasement, corruption,
perversion or deterioration," and that finding either
heinousness or depravity required proof that the killing
involved the "infliction of gratuitous violence" or "needless
mutilation of the victim's body after death." *See Richmond*,
506 U.S. at 50–51; *Jeffers*, 497 U.S. at 770. Indeed, to
further guide the juries, the state trial court defined
"gratuitous violence" as "violence committed upon the victim
beyond that necessary to kill" and "needless mutilation" as

mutilation of the victim's corpse "in an act separate from the killing itself."[19]

### c.

In an effort to avoid the U.S. Supreme Court decisions approving Arizona's narrowing construction, Smith argues that *Ring v. Arizona*, 536 U.S. 584 (2002), "implicitly overruled" *Walton* on this point because it held that jurors rather than judges must find aggravating factors, thereby abrogating *Walton*'s contrary determination. Smith argues that the U.S. Supreme Court "reluctant[ly]" accepted Arizona's narrowing construction in *Walton* only because when *Walton* was decided, judges rather than juries found the

---

[19] Smith challenges the "needless mutilation" instruction because it failed to define "mutilation," in contrast to the Nevada instruction that we approved in *Deutscher v. Whitley*, 884 F.2d 1152, 1162 & n.1 (9th Cir. 1989) (approving the "mutilation" instruction given to the jury regarding Nevada's "torture, depravity, mutilation" aggravator), *judgment vacated sub nom. Angelone v. Deutscher*, 500 U.S. 901 (1991). *Deutscher*'s approval of Nevada's mutilation instruction, however, does not render Smith's mutilation instruction an unreasonable application of clearly established federal law.

In *Deutscher*, 884 F.2d at 1162–63, and then in *Valerio v. Crawford*, 306 F.3d 742, 755–56 (9th Cir. 2002) (en banc), we held Nevada's depravity instructions unconstitutionally vague and compared them to the impermissible aggravators in *Godfrey* and *Cartwright*. Unlike the instructions in Smith's case, however, Nevada's improper depravity instruction did not require the jury to find any particular fact or look to any identified factors. *See Deutscher*, 884 F.2d at 1162 n.1 ("[D]epravity of mind is characterized by an inherent deficiency of moral sense and rectitude. It consists of evil, corrupt and perverted intent which is devoid of regard for human dignity and which is indifferent to human life. It is a state of mind outrageously, wantonly vile, horrible or inhuman."); *Valerio*, 306 F.3d at 752 (same).

(E)(6) factors or (E)(6) aggravator. According to Smith, "[t]he change in Arizona's law, from judge to jury sentencing, renders Arizona's heinous, cruel, or depraved aggravating circumstances unconstitutional."

Smith's argument does not support granting habeas relief. Smith argues that *Ring* undermines the constitutionality of Arizona's (E)(6) aggravator jury instructions—as approved by the U.S. Supreme Court in *Walton*, *Jeffers*, and *Richmond*—despite the Court's silence in *Ring* on the effect of its holding on those prior cases.[20] But "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* [Supreme Court] precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." *White*, 134 S. Ct. at 1706. As the Court has explained, "if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." *Id.* (internal quotation marks omitted). The Court has not "squarely established" that the instruction approved of in its prior decisions is insufficient when put to a jury. *Id.* Irrespective of whether invalidation of the jury instructions in *Walton*, *Jeffers*, and *Richmond* is "the logical next step" after *Ring*, the Court "ha[s] not yet taken that step, and there are reasonable arguments on both sides—which is all [Arizona] needs to prevail in this AEDPA case." *Id.* at 1707.

---

[20] In *Ring*, the Supreme Court had no reason to evaluate the (E)(6) aggravator because on direct review the state supreme court had found insufficient evidence to support its application, relying instead on a different aggravator. 536 U.S. at 596.

In light of the Court's decisions in *Godfrey*, *Cartwright*, *Walton*, *Jeffers*, *Richmond*, and *Ring*, neither the state trial court's decision to give the (E)(6) narrowing instruction, nor the Arizona Supreme Court's (E)(6) analysis, was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harringon*, 562 U.S. at 103.

**E.**

Finally, in Claim 39 Smith argues that the district court erred in denying his claim of ineffective assistance of counsel at his 2004 resentencing proceedings. Specifically, Smith points to a positron emission tomography ("PET") scan and diffusion tensor imaging ("DTI") study that revealed evidence of organic brain damage. Smith argues that his counsel's failure to obtain and present those scans at his resentencings constituted ineffective assistance of counsel.

**1.**

In Smith's Rule 32 petition, he alleged that the PET scan constituted newly discovered evidence that entitled him to post-conviction relief. The petition did not allege ineffective assistance of counsel. The superior court denied Smith's petition, ruling that the PET scan could have been obtained or "discovered" prior to his resentencing, and that the scan was cumulative of Dr. Parrish's testimony. The Arizona Supreme Court denied review.

In the district court, Smith argued for the first time that his counsel's failure to obtain the PET scan and DTI study constituted ineffective assistance. The district court denied relief on this claim on several grounds. The court found that

Smith's sentencing counsel had not been ineffective, noting that Smith had been examined by ten doctors and psychiatrists prior to the resentencing proceedings, none of whom had found any organic brain damage. The district court also found that Dr. Parrish's testimony, along with testimony about Smith's difficult childhood and history of asthma, sufficiently addressed the concerns expressed by our 1999 opinion, *see Smith*, 189 F.3d 1004, and that the strength of the prosecution's rebuttal evidence foreclosed a finding of prejudice. The district court further concluded that Smith had procedurally defaulted his ineffective assistance of counsel claim by failing to raise it before the Arizona state courts.

**2.**

Smith failed to raise his ineffective assistance of counsel claim in his state post-conviction proceedings, as required by Arizona law. *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014). Thus, we agree with the district court that Smith's ineffective assistance of counsel claim was procedurally defaulted.

Smith argues that his default is excused under *Martinez v. Ryan*, —U.S.—, 132 S. Ct. 1309, 1316–17 (2012). We have held that

> [t]o establish 'cause' to overcome procedural default under *Martinez*, a petitioner must show: (1) the underlying ineffective assistance of trial counsel claim is 'substantial'; (2) the petitioner was not represented or had ineffective counsel during the PCR proceeding; (3) the [Rule 32] proceeding was the initial review proceeding; and (4) state law

required (or forced as a practical matter) the petitioner to bring the claim in the initial review collateral proceeding.

*Dickens*, 740 F.3d at 1319 (citing *Trevino v. Thaler*, —U.S.—, 133 S. Ct. 1911, 1918 (2013)). Smith satisfies the third and fourth prongs of the *Dickens* test because Arizona law does not permit defendants to raise ineffective assistance claims on direct appeal, and Smith failed to allege such a claim in his Rule 32 petition. *See Martinez*, 132 S. Ct. at 1316–17; *Dickens*, 740 F.3d at 1319. The first prong of the test, however, requires that the underlying ineffective assistance of counsel claim be "substantial." Under that standard, an underlying claim is "insubstantial" if it "does not have any merit or . . . is wholly without factual support." *Martinez*, 132 S. Ct. at 1319. Thus, to assess whether Smith has satisfied the first prong required to excuse his procedural default under *Dickens*, we conduct a preliminary assessment of his underlying claim.

To establish ineffective assistance of counsel, Smith must demonstrate (1) that counsel was ineffective and (2) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 692 (1984). To satisfy the second prong, Smith "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, even if counsel's failure to obtain the brain scans constituted deficient performance, Smith cannot establish prejudice. In a capital case, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and

mitigating circumstances did not warrant death." *Id.* at 695. The prosecution's evidence in both the Spencer and Lee sentencing hearings was extensive. The jurors were presented with evidence of Smith's prior rapes, including the brutal rape of Dorothy Fortner while she was pregnant. They also heard, in graphic detail, how Smith tortured and suffocated Spencer and Lee. Moreover, the brain scans that Smith obtained in the Rule 32 proceedings were largely cumulative of the mitigating evidence presented by Dr. Parrish. Dr. Parrish conducted a battery of neuropsychological tests on Smith, and she testified that he suffered mild to moderate brain impairment and that his results fell in the "brain damaged range." Given the strength of the prosecution's rebuttal evidence and the cumulative nature of the brain scans, Smith cannot establish that any deficient performance by counsel affected the sentences imposed. Because Smith cannot establish prejudice, we need not consider whether the performance of Smith's sentencing counsel fell below a reasonable standard of professional competence.

Smith's underlying claim is not substantial, therefore Smith's procedural default cannot be excused under *Martinez*. 132 S. Ct. at 1317. We thus conclude that Smith's ineffective assistance of counsel claim was procedurally defaulted.

## IV.

For the forgoing reasons, we affirm the district court's denial of Smith's petition.

**AFFIRMED.**